SAMUEL ALBERTSON v. BLAND WALLACE, Sheriff.

*Taxation—Constitutional Law.*

1. The tax imposed by section 12, schedule B, of the acts of 1876–'77, ch. 156, is a privilege tax upon *occupations*, measured by the extent of the business, and not a tax upon the capital invested in such business.
2. The exemption in the foregoing section of purchases from those who have already paid their tax does not apply to dealers in spirituous liquors whose purchases are taxed under section 10, schedule B, of said act.
3. A tax which discriminates in favor of purchases from wholesale dealers, resident in the state, who have paid their tax, and against purchases from non-residents who have not, is void for repugnancy to the clause of the federal constitution which vests in congress the power to regulate interstate commerce.

(*Davis* v. *Dashiel,* Phil. 114, overruled.)

INJUNCTION heard at Fall Term, 1878, of DUPLIN Superior Court, before *McKoy, J.*

The action in which the injunction was obtained was commenced by the plaintiff against the defendant to test the legality of sections ten and twelve of schedule B, chapter 156, of the acts of 1876–'77. The plaintiff obtained a restraining order preventing the sale of certain personal property levied on by defendant as sheriff of Duplin county for the satisfaction of a tax assessed by the register of deeds against the plaintiff. It appeared that plaintiff was a grocery merchant and retail dealer in spirituous liquors, doing business in the town of Kenansville, and had paid all taxes assessed against him, except that assessed under the said sections from the 1st of January to the 1st of July, 1877, amounting to seventeen dollars and sixty cents, state and county tax on the amount of purchases of liquors during said period, and also the sum of thirty cents on the amount of purchases of other groceries from wholesale dealers doing business out of this state. It also ap-

peared that plaintiff's entire purchases of liquors had been made from wholesale dealers in the state who had paid the tax to the state and county under said section ten.

The plaintiff insisted that the tax upon liquors bought as aforesaid, and also that the tax upon the other articles, was unconstitutional, but the court being of a different opinion gave judgment that the injunction be dissolved, and the plaintiff appealed.

*Mr. H. R. Kornegay*, for plaintiff:

Cited and commented on *Buie* v. *Commissioners*, 79 N. C., 267; *London* v. *Wilmington*, 78 N. C., 109; *Huggins* v. *Hinson*, Phil., 126; 69 N. C., 47; Phil., 114. It is not competent for the legislature to pass any law imposing a discriminating tax against non-resident traders.

*Messrs. Reade, Busbee & Busbee*, for defendant:

Submitted an argument upon the statute in question and commented on the case of *Davis* v. *Dashiel*, Phil., 144, and upon the power given to the legislature to tax trades, professions, &c., under section three, article five of state constitution.

SMITH, C. J. The appeal brings before us for consideration the interpretation of the tenth and twelfth sections of schedule B of the revenue law of March 10th, 1877 (Acts of 1876–'77, ch. 156), and their consistency with the constitutions of the United States and of this state.

The plaintiff is a grocer, dealing in spirituous liquors and other merchandise, incidental to his business, and is charged with a tax of $8.80, being five per cent. on the amount of his purchases of spirituous liquors for the six months preceding July 1st, 1877, for the state, and a like sum for county purposes. These liquors were all bought of wholesale dealers at Wilmington, who have paid a similar tax as required by section ten. He is also assessed with a tax for both state and county of thirty cents on the amount of his

purchases of other merchandise, out of the state. The purpose of the suit is to arrest the collection of these taxes, on the ground of their illegality. Several propositions have been maintained in the argument of the plaintiff's counsel.

1. There has been an *ad valorem* tax levied and collected on the stock of liquors as a part of the plaintiff's taxable property, and the assessment under section ten is a duplication not allowable under the constitution.

2. The spirituous liquors are exempt from the tax by virtue of the concluding words of the first sentence in section twelve.

3. The discrimination against goods purchased out of the state is repugnant to the constitution of the United States, which commits to congress the exclusive right to regulate inter-state commerce.

The correctness of these propositions we will proceed to examine in their order.

1. The first proposition is founded on a misconception of the meaning of section three, article five of the constitution, which prescribes a "uniform rule" of taxation upon property "according to its true value in money." The liquors which the defendant had on hand on the first day of June, and which then constituted a part of his aggregate taxable property, were properly assessed with the *ad valorem* tax as directed in the first clause of the section. The tax imposed in sections ten and twelve of the revenue act is not a *tax on property*, but upon the *trade* or *occupation* of the person, and is authorized by the concluding words of section three: "The general assembly may also tax trades, professions, franchises and incomes, provided that no income shall be taxed when the property from which the income is derived is taxed." It is under this clause that the tax is levied under sections ten and twelve on the plaintiff's *business* or calling, and the amount of the tax to be paid is measured by the extent and magnitude of that business.

31

The schedule recites in direct language that " the taxes in this schedule imposed, are a license tax for the privilege of carrying on the business or doing the act named," and declares that " nothing in this schedule contained shall be construed to relieve any person from the payment of the *ad valorem* tax on his property, as required in the preceding schedule."

We see no just objection to the mode adopted for ascertaining and determining the amount of the privilege tax and making it dependent upon the extent of the business of which the amount of the aggregate purchases may be as accurate a test or measure as any other that could be adopted. This mode of taxing is, in our opinion, eminently fair and reasonable in its operation. A specific tax of a definite sum upon a trade, without regard to the extent of the trader's operations, and pressing with the same force on one whose business is small as upon the large operator, would be very unequal. The ability to pay increases with an increased and successful business, and it is just and proper to gauge the sums to be paid upon that principle. This is what the statute undertakes to do, and no more, and it lies within the discretion of the taxing power to levy the privilege tax under this rule.

2. The plaintiff insists that upon the proper construction of the associated sections, the exemption of purchases from those who have already paid the tax on their business, applies equally to spirituous liquors, as to other kinds of merchandise, and therefore no tax is due from him.

The subject is not altogether free from difficulty and we have, after careful comparison of those sections, arrived at the conclusion that the exemption in section twelve does not extend to section ten. The latter is complete and unconditional, and requires that " *every dealer in spirituous* or vinous liquors, porter, lager beer or other malt liquors, shall pay a tax of five per cent on the amount of *any and all liquors.*"

There is no qualification or exception and the language is peremptory and explicit. Section twelve imposes a tax on "every merchant, jeweler, grocer, druggist and every other trader who, as principal or agent, carries on the business of buying or selling goods, wares or merchandise of whatever name or description, *except such as are specially taxed elsewhere in this act*," &c., obviously excluding from the scope of the general words of description, dealers in spirituous and other liquors, whose business is taxed in the preceding two sections; and it is to the class specified in the section itself, that is, all other traders except those who deal in spirituous liquors, that the concluding words apply. "But no retail merchant shall be required to pay any tax on purchases made from wholesale merchants residing in the state." The words are all contained in a single sentence, and the exception must be construed as limiting the generality and scope of the preceding language.

This construction is fortified by the fact apparent in all the adverse legislation in relation to the sale and use of spirituous liquors, that the traffic is not favored, but is subjected to heavy burdens and restraints, and in localities is almost entirely prohibited. The same general policy is carried out in the imposition of the license taxes, so much greater for the trade in this than in other articles of merchandise, and without the deductions allowed on the latter. We cannot therefore so interpret the act as to exempt the plaintiff from the assessment on his business, simply because those who sold to him have already paid a like tax on the amount of their purchases, and these goods constituted a part of their stock, in opposition to a law which taxes *all dealers*, without exception or regard to the source from which they were obtained.

The suggestion that a law, distinguishing between the trade in liquors and other articles of merchandise, is an exercise of power not warranted by the constitution of the

United States or of this state, is sufficiently answered in what we have said in the opinion in the case of the *State* v. *Joyner*, decided at the present term, and we content ourselves by referring to the authorities there cited.

3. The third proposition is that the discrimination in favor of purchases made from wholesale dealers resident in the state, who have paid their privilege tax, and against purchases made from those who have not, and from non-residents, interferes with the exclusive power conferred on congress " to regulate commerce with foreign nations, and among the several states, and with the indian tribes. Const. of the U. S., Art. I, § 7 (3).

This objection applies only to the small tax of thirty cents derived from the aggregate purchases of merchandise other than spirituous liquors, from without the limits of the state, since, as we have said, the discrimination does not extend to the latter.

In the case of *Davis* v. *Dashiel*, Phil., 114, was called in question the validity of a provision in the revenue act of 1866 which imposed a tax upon every resident of the state who brings into the state, *or buys from a non-resident* whether by sample or otherwise, spirituous liquors, &c., for the purpose of sale, fifteen per cent on the amount of his purchases," and on " every person who buys to sell again spirituous liquors, &c., from the makers in this state, his agent, factor or commission merchant, ten per cent on the amount of his purchases." Upon a review of the authorities it was held that the discrimination was not repugnant to the clause of the constitution, which forbids a sale without the consent of congress to lay imposts or duties on imports or exports. Art. I, § 10 (2). Nor to the clause already cited in regard to the regulation of commerce among the states.

The opinion is based on the theory that when goods are brought into the state and mixed up with the mass of its property, they lose their separate identity as an importation,

and may be singled out and taxed at the will of the legisla-
ture, and this tax may discriminate against them, as of for-
eign origin.   The decision was made in 1867 and upon facts
occurring antecedent to the change in the constitution, and
when the taxing power was not under its present restric-
tions.   It is quite clear such a statute is not authorized under
a system of uniform, *ad valorem,* taxation now prescribed by
the fundamental law.   But aside from this, that decision is
in conflict with the provisions of the federal constitution,
as expounded by the supreme court of the United States,
since it was made, in the case of *Welton* v. *State of Missouri,*
91 U. S., 275, and the question must now be considered set-
tled.   The facts of this case are briefly these :   The legisla-
ture by statute defined a peddler to be one who " shall deal
in the selling of patents, or other medicines, goods, wares,
or merchandise, except books, charts, maps and stationery,
which are not the *growth, produce* or *manufacture* of this state,
by going from place to place to sell the same," and prohib-
ited any one dealing, as a peddler without license, for which
a rate of charge is prescribed, under a penalty ; while no
such license is required from one who sells by going from
place to place, articles " the growth, produce or manufacture
of the state."

The constitutionality of this tax was drawn into contro-
versy, and defended on the ground that it was a privilege
tax only and not a discriminating tax on property made in
and out of the state.

The court say, Mr. Justice FIELD delivering the opinion :
" The general power of the state to impose taxes in the way
of licenses upon all pursuits and occupations, within its
limits, is admitted ; but like all other powers, must be exer-
cised in subordination to the requirements of the federal
constitution.   Where the business or occupation consists in
the sale of goods, the license tax required for its pursuit is
in effect a tax upon the goods themselves.   If such a tax be

within the power of the state to levy, it matters not whether it be raised directly from the goods, or indirectly from them through the license to the dealer; but if such tax conflict with any power vested in congress by the constitution of the United States, it will not be any the less invalid because enforced through the form of personal license." Then after a full discussion of the question and an examination of the authorities, the result is thus stated : " It is sufficient to hold now that the commercial power *continues* until the commodity has ceased to be the subject of *discriminating legislation by reason of its foreign character.* That power protects it, even after it has entered the state, from any burdens imposed by reason of its foreign origin. The act of Missouri encroaches upon this power in this respect, and is therefore, in our judgment, unconstitutional and void."

We cannot withdraw the tax now under consideration from the condemnation of the principle thus declared, and we yield to the authority of the decision. It is true, purchases from resident wholesale dealers who have not paid the tax, are put on the same footing as purchases from nonresidents, but as such wholesale dealers doing business in the state are required to pay the tax, the law makes practically and really the distinction between the home and nonresident merchant in regard to the goods, the very result against which the framers of the constitution intended to guard, by vesting the power in congress and denying it to the states.

It is further argued that purchasers from home dealers are freed from the tax in order to put them on an equal footing with purchasers from non-residents, and in both cases one tax only be collected. · Otherwise a double assessment would be borne by the liquors in one case, and a single assessment in the other, to the disadvantage of the home merchant, and this, it is the purpose of the law to remove. But a state cannot on such pretext distinguish by legislation

against goods imported, so as to put on them, *as such*, a heavier burden than its own productions are made to bear, neither directly nor by license charges. Much confusion would ensue if the states were allowed thus to discriminate against the productions and manufactures of each other, to favor their own, and hence the constitution forbids it to be done.

It will be noticed that there is a specific sum of five dollars required to be paid in addition to the per centum on the sales of other commodities as a pre-requisite to engaging in the traffic. It follows therefore that when, as in the present case, the trader deals in spirituous liquors and in other merchandise, the tax to be paid upon them will be on the amount of his purchases of the former, the same as if that was his exclusive business, and upon other merchandise such as he would pay if he did not deal in liquors. In a proper sense he comes under the provisions of both sections.

The plaintiff is therefore entitled to relief from the sum of thirty cents only, and must pay the residue of assessment in the defendant's hands for collection. With this modification the interlocutory order is affirmed.

PER CURIAM.                                    Modified and affirmed.