STATE v. W. E. WORTH.

*Indictment for Violation of City Ordinance—License Tax—Municipal Power to Tax Trades—Construction of Statute.*

1. The word "trade" when used in defining the power to tax, includes any employment or business for gain or profit.

2. Section 3 of Art. 5 of the Constitution authorizes the Legislature' to tax trades, professions, franchises and incomes. Section 3800 of *The Code* empowers cities and towns to levy taxes "on all persons, property, privileges and subjects within the corporate limits which are liable to taxation for State and County purposes," and Ch. 192, Acts of 1876–'77 confers upon the City of Wilmington authority to levy taxes on all subjects liable to taxation under Sec. 3, Art. 5, of the Constitution. *Held*, that the City of Wilmington is authorized under the statutes named to levy a tax upon the manufacture and sale of ice.

3. A municipality authorized to tax trades, professions, franchises and incomes is not bound to tax them uniformly as to amount.

4. An act authorizing the levy of a tax by a city on a particular date will be construed as authorizing the levy on that date or within a reasonable time thereafter.

Defendant was charged with violation of city ordinance of Wilmington and appealed from the ruling of the Mayor to the Criminal Court of NEW HANOVER, at the January, 1895, Term of which he was tried before *Meares, J.*, and a jury.

The city tax laid against defendant as an ice dealer is under the following : " For the storage, manufacture or sale of ice at wholesale, with privilege of retailing, $66 per annum," which he insists is illegal.

Upon the trial below the jury found a special verdict, as follows :

" That on June, 1894, the defendant carried on the busi-.

ness of ice manufacturer, converting water into ice, in the city of Wilmington, and of selling the said manufactured product at wholesale and retail in said city; that they had carried on said business for several years, and are still carrying it on. That on said first day of June, 1894, and for ten days thereafter, the defendants failed to pay the tax levied by the said city upon their business, being the tax found in the General Tax Ordinance passed May 29, 1893, section 10, sub-section 52, and have not yet paid said tax. That there are merchants in said city who buy and sell ice that they do not manufacture, but defendants are not of this class. That the said city passed on May 29, 1893, the General Tax Ordinance for the year 1893, and on August 6, 1894, the General Tax Ordinance for 1894, both of which are hereunto annexed.

" The jury upon the foregoing facts are unable to say whether the defendants are guilty or not guilty; and if upon these facts the Court is of the opinion that the law is with defendants, then the jury find the defendants not guilty; and if the Court is of the opinion that the law is against the defendants, then the jury find the defendants guilty."

The Court being of the opinion that the law on the above facts was against the defendants a verdict of guilty was entered, and judgment rendered in the sum of one penny each against the defendants, and that they pay the cost of this proceeding. From this judgment the defendants appealed.

The defendants, through their counsel, assign error as follows:

" 1. That the business of an ice manufacturer is not taxed by the Act of 1860-'61, Private Acts (which were in evidence), chapter 180, page 218.

" 2. That the city has no right to tax an ice manufac-

turer by virtue of Public Acts 1876-'77, chapter 192, section 9, or by section 3800, Vol. II, *Code of North Carolina,* or any other law appertaining to said city.

"3. Because the ordinance above referred to only applies to such business conducted up to June 1, 1894, and is not covered by the Ordinance of 1894, as that was not passed until August 6, 1894.

"4. Because the tax imposed is not uniform, as the ordinance is generally discriminative, especially against ice manufacturers."

*Mr. P. B. Manning* with *The Attorney General,* for the State.

*Mr. J. D. Bellamy, Jr.,* for defendants (appellants).

AVERY, J.: The Constitution of North Carolina (Art. V, Sec. 3) authorizes the Legislature to tax trades, professions, franchises and incomes. This power may be exercised directly for State purposes, or delegated by statute to the counties and towns as governmental agencies in order to provide for municipal expenses. The statute (*The Code,* Sec. 3800) empowers cities and towns to levy taxes "on all persons, property, privileges and subjects within the corporate limits, which are liable to taxation for State and County purposes." The amended city charter (Laws of 1876-'77, Ch. 192, Sec. 9) confers authority to levy taxes on all subjects liable to taxation under Art. V, Section 3, of the State Constitution, "and also on all other subjects of taxation on which authority to levy taxes enumerates." The power to tax trades, &c., is superadded to the general authority to impose a uniform *ad valorem* tax on all property.

One of the levies made by the city of Wilmington is described in its tax ordinance as follows: "For storage,

manufacture or sale of ice at wholesale, with privilege of retailing, $66 per annum." Does the power to tax trades authorize the imposition of this tax on the defendant as a manufacturer of ice? The appeal hinges upon the answer to this question. The power delegated by the State to its political subdivisions must be exercised within the scope of a strict construction of the language used by the Legislature and especially must governmental agencies show authority of law for the levy of taxes. Cooley's Const. Lim., pp. 636 to 638; Sedgwick S. & C. Lim., 466; Southerland on Stat. C., Sec. 378. But while this principle is well established we do not think that the city has transcended its authority. The word trade is often used in a more restricted sense to mean either the particular occupation of a mechanic or a merchant; but where it is used in defining the power to tax its broadest signification is given to it and it is interpreted as comprehending not only all who are engaged in buying and selling merchandise but all whose occupation or business it is to manufacture and sell the products of their plants. It includes in this sense any employment or business embarked in for gain or profit. The Schooner Nymph, 2 Summers' Reports, 516 (opinion by Justice STORY); *Bank* v. *Wilson*, Law Rep. (Ex. Div.) 108; *May* v. *Sloan*, 101 U. S., 231. We think that the city is empowered by the Act of 1876-'77, certainly, if not by Section 3800 of *The Code*, to impose the tax on manufacturers of ice.

It would be "sticking in the bark" to so construe the law as to restrict the authority to levy to the particular date (January 1st,) mentioned in the Act. The city may every year, either on or within a reasonable time after the day mentioned, alter by increasing, diminishing or abrogating this specific levy on any of the subjects comprehended under the terms used in the Constitution, but it was not

STATE *v.* WORTH.

intended that the right to exercise the power should be limited to a particular day or that the city should be deprived of revenue upon any taxable trade because the authorities failed to formally declare on the 1st of June whether each specific levy should be increased, diminished or discontinued for the ensuing year. We see no force in the suggestion that the Legislature or the city, as a sub-agency of the government established by it, is bound to tax uniformly, as to amount, the different subjects of taxation comprehended under the general description as "trades, professions, franchises and incomes." It was not intended to limit the exercise of a sound discretion by compelling the city authorities to make the amounts exacted for converting meats into sausage and for manufacturing and selling ice exactly the same. No such rule of uniformity is prescribed in our organic law. When the power delegated to a city or town is abused in this respect the Legislature may restrict their discretionary authority by fixing a maximum or minimum limit for the tax on any or all of the subjects specifically taxed. But they have not done so and we see no evidence of abuse of power, if we had authority to correct or remedy such a wrong.

For the reasons given we think that there was no error.

No Error.