PYE, by next friend, v. PYE.

1. Under the pleadings and evidence in this case, the jury would have been authorized to set aside the deed, if there was great inadequacy of consideration in the contract, joined with great disparity of mental ability between the grantor and the grantee; and where the court charged: "Great inadequacy in price, joined with great disparity of mental ability in the contracting of a bargain, may justify equity in setting aside a contract," it was error to add thereto, "provided the jury from such facts and all of the proven facts in the case conclude there was fraud practiced by wrong and undue influence on the maker of the deed by the grantee, thereby causing him to do what does not express his real wish, but the wish of the grantee."

2. The evidence and the pleadings carried to the jury issues other than the one involving the question as to whether or not the maker of the deed had mental capacity to make it; and it was error for the court to so charge as to impress the jury with the idea that the issue as to such mental capacity was the only one involved.

3. A complaint that the judge erred in not explaining to the jury the meaning of the words "fraud" and "undue influence," as used by him in his charge, is without merit. there being no request that such explanation be made.

Argued February 9,—Decided August 14, 1909.

Action to cancel deed. Before Judge Lewis. Jasper superior court. April 20, 1908.

Charles A. Pye, by his next friend, J. E. Pye, brought suit against T. W. Pye to cancel a deed to the defendant, dated January 2, 1906, to 100 acres of land, on the ground that the maker, Charles A. Pye, at the time of the execution of the deed was non compos mentis, and, in the language of the petition, that "he did not possess then, nor does he possess now, the mental capacity to make a deed." The consideration expressed in the deed was $500, which the petition alleged "was entirely fictitious, and that in truth and in fact the said instrument was entirely without any consideration whatsoever." The petition further alleged that if the deed was supported by any consideration, "even the expressed consideration therein is utterly and entirely inadequate, said tract or parcel of land being well worth in the open market the sum of $2,-000, all of which was well known to the said T. W. Pye." An amendment was offered wherein it was alleged: "Petitioner further to the court shows, that, for years previous to the date of the said above-mentioned deed, the said Charles A. Pye resided at the home of the said T. W. Pye, that the said T. W. Pye had assumed charge

of the business, affairs, land, and person of the said Charles A. Pye, had enlisted his affections, obtained his confidence, styled himself the agent of the said Charles A., and took advantage of this fiduciary relation and weak mind of the said Charles A., by then and there unduly and fraudulently inducing the said Charles A. to sign said instrument in writing, and convey to him in fee simple, without any limitations or conditions; all the property owned by the said Charles A., without any consideration whatsoever, or at best a consideration totally inadequate." The defendant, in his answer, admitted that Charles A. Pye executed to him a deed to the land, but denied all the other material allegations in the petition. Charles A. Pye also filed an instrument in writing, stating that he was then and at the time of the execution of the deed, which was valid, of sound mind and desired the case dismissed.

A verdict for the defendant was rendered, and the plaintiff excepted to the refusal of a new trial. The only evidence in behalf of the plaintiff necessary to set out was substantially as follows: Charles A. Pye has never been married, and is 63 years of age. When his mother died 23 years ago, the property belonging to him and his brothers and sister was divided, and the land involved in the suit was assigned to Charles A. Pye. It was agreed between the defendant and his brothers and sister that "whoever took Charlie to live with them would have the use of his land for his support and board and for his care." After the death of his mother, his brother John took charge of him, and he lived with the latter two years or more. He has since been living with his other brother, the defendant, about 15 years. The land is worth $1,500 to $2,000. It rents for about 4 bales of cotton. He has been doing light work at the home of the defendant. The plaintiff also introduced testimony to the effect that Charles A. Pye was not a man of sound mind. The only evidence offered by the defendant necessary to be set out is as follows: Defendant introduced Charles A. Pye as a witness, who said that he had the deed made and wanted it to stand as valid. The defendant testified, among other things, to the following: "In 1906 my brother and myself were in our room together and got to talking about our situation. He (C. A. Pye) being an unmarried man, and I said to him, 'Charlie, you are not a married man, and you are living with me, and I am glad to have you with me, and I don't suppose

you will ever marry.' He said, 'No.' I said, 'I don't know who will be the longest lived, me or you, or any of our brothers and sisters; but,' I said 'have you any preference who should have your land?' He said, 'Yes,' and I said, 'Who?' He said, 'I prefer for you and your children to have it.' I said, 'If these are your wishes, I will have a deed drawn to it,' and he agreed to it, and readily gave the deed, and I had it drawn, and he signed it. I did not tell enough along there of our talk; he expected to live with me all of his life. That is why he wanted me to have it, and I assured him he would live with me and my family all of his lifetime. I was not to pay him any money. That was the actual consideration of the deed, inasmuch as he was living with me and expected to continue. That was all there was said. He was just to give me the deed to the land because he preferred to do so. I was to furnish him a home, and support and maintenance for the balance of his life. That was the real consideration of the deed. My brother and myself have been living under an agreement ever since we have been living together. The agreement was this, when he first came to my house : that the land he did not cultivate I would cultivate it or rent it, and take that on his board; and he made his crop himself and that was his. After a few years his horse was old; and I said, 'Charlie, I think we could get a living without your working your crop; and if you sell your horse and stay around the house here, I will take charge of the farm, and I think we will make a living;' and I sold the horse to Mr. J. L. Lane for $25, and gave him his money, and ever since that time we have been living under that agreement." The defendant, and. other witnesses introduced by him, testified that Charles Pye was of sound mind.

*Greene F. Johnson* for plaintiff. *F. Jordan & Son, A. S. Thurman,* and *F. C. Foster,* for defendant.

FISH, C. J. 1. One of the grounds of the motion for a new trial is, that, after charging the jury as follows: "Great inadequacy in price, joined with great disparity of mental ability in the contracting of a bargain, may justify equity in setting aside a contract," the court committed error in immediately adding thereto the following, "provided the jury from such facts and all of the proven facts in the case conclude there was fraud practiced by wrong and undue influence on the maker of the deed by the gran-

tec, thereby causing him to do what does not express his real wish, but the wish of the grantee." Civil Code, §4033, provides: "Great inadequacy of consideration, joined with great disparity of mental ability in contracting a bargain, may justify a court of equity in setting aside a sale or other contract." The judge gave to the jury a charge in substance in the language employed in this section; and we think he erred in qualifying this part of the charge in his instructions to the jury, that although there was great inadequacy in the price and great disparity of mental ability in the contracting parties, the jury could not set aside the contract unless there was "fraud practiced by wrong and undue influence on the maker of the deed by the grantee, thereby causing him to do what does not express his real wish, but the wish of the grantee." Under the section above quoted, the jury had a right, in this equitable proceeding, to set aside the deed if they believed there was "great inadequacy of consideration, joined with great disparity of mental ability" in making the contract, without proof of anything else. The pleading and the evidence made it proper for the judge to give in charge to the jury the provisions of the code section above quoted; and it was error, requiring a new trial, for the judge, in giving such provisions in charge, to qualify them in the manner complained of.

2. The plaintiff further complains that the court committed error in the following charge: "The real issue involved in this case is whether or not at the time of the execution of the deed the party had mental capacity sufficient to make the deed." Error was assigned on this charge, because it withdrew from the jury the consideration of the issue raised by the amendment to the petition. In another ground of the motion for a new trial complaint is made of the following charge: "You can consider the reasonableness or the unreasonableness of the transaction solely upon the idea of ascertaining whether or not the party had mental capacity to make the deed." The plaintiff contends that this charge was error, because it restricted the jury, in their consideration of the reasonableness or unreasonableness of the transaction, to the question as to whether or not Charles A. Pye had mental capacity to make the deed, whereas the jury had a right to consider the reasonableness or unreasonableness of the transaction on other issues in the case. We think that each of the charges complained of was error, in

view of the pleadings and the evidence. The issue made by the pleadings and the evidence was not solely whether or not Charles A. Pye was non compos mentis. The evidence and the pleadings made issues in the case other than the one involving the question as to whether or not Charles A. Pye had "mental capacity to make a deed." One issue other than the one regarding the mental capacity of Charles Pye to make the deed was the one referred to in the preceding division of this opinion, concerning the inadequacy of consideration and the disparity of mental ability. If there was great inadequacy of consideration in the contract and great disparity of mental ability between the grantor and the grantee, the jury were authorized, under the pleadings and the evidence, to set aside the deed, even if Charles A. Pye did have mental capacity to make it. We think the above-quoted charges were error.

3. Complaint is made that the judge committed error in failing to define and explain to the jury the meaning of the words "fraud" and "undue influence," as used by him in his charge. As there was no request for such explanation to be given, the complaint is without merit. *Pickens* v. *State*, 132 *Ga.* 46 (63 S. E. 783). The other charges complained of were not subject to any of the criticisms made in the assignments of error thereon.

*Judgment reversed.    All the Justices concur.*