E. B. FICKLEN TOBACCO COMPANY v. A. J. MAXWELL, COMMISSIONER OF REVENUE FOR THE STATE OF NORTH CAROLINA.

(Filed 9 November, 1938.)

1. **Taxation § 1—Statute imposing license tax on scrap tobacco dealers held not discriminatory as delegating taxing power to warehousemen.**

Public Laws of 1937, ch. 414, imposing a license tax on dealers in scrap tobacco, defines the term "scrap tobacco" as "any lot of parts of leaves, or lot in which parts of leaves are commingled (1) with whole leaves of tobacco, or (2) parts of leaves of tobacco not permitted . . . to be offered for sale at auction on tobacco warehouse floors," and the definition of "scrap tobacco" thus interpreted in accordance with the legislative intent as gathered from the statute, is the same as the well recognized and general usage of the term within the trade itself, and the statute is not objectionable on the ground that it is vague, discriminatory, or unreasonable, or that it delegates the taxing power to warehouses by making any tobacco which they refuse to permit to be sold at auction on their floors "scrap tobacco."

2. **Constitutional Law § 6b—**

The presumption is in favor of the constitutionality of a statute, and a statute will not be declared unconstitutional unless this conclusion is so clear that no reasonable doubt can arise.

3. **Taxation § 1—**

Public Laws of 1937, ch. 414, expressly provides that the license tax therein provided for should be paid by "every person, firm or corporation engaged in buying or selling scrap tobacco," and is, therefore, uniform and equal in its application.

4. **Taxation §§ 2a, 2c: Constitutional Law § 4b—**

The General Assembly has wide discretion in selecting the objects of taxation, and in classifying business and trades for taxation and allocating to each its proper share of the expenses of Government.

5. **Taxation § 8: Constitutional Law § 4b—License tax on scrap tobacco dealers held not excessive as a matter of law.**

The amount of a tax levy is largely in the discretion of the General Assembly and the courts may determine that it is excessive as a matter of law only in exceptional and unusual cases, and the tax of $1,000 per county for dealers in scrap tobacco, imposed by ch. 414, Public Laws of 1937, *is held* not excessive as a matter of law.

6. **Constitutional Law § 4b—**

When the General Assembly has the power to levy a particular tax any collateral motives in levying the tax are not subject to judicial review.

7. **Statutes § 3—**

Ch. 414, Public Laws of 1937, imposing a license tax on dealers in scrap tobacco, *is held* not vague or uncertain, and objection to its validity on that ground is untenable.

APPEAL by plaintiff E. B. Ficklen Tobacco Company from *Frizzelle, J.,* at Chambers, by consent, July, 1938. From PITT. Affirmed.

Action under Uniform Declaratory Judgment Act (ch. 102, sec. 16, of the Public Laws of 1931) to test the validity of chapter 414, Public Laws of North Carolina—"An act to provide a tax on scrap tobacco or untied tobacco and to. license the buyers."

The agreed statement of facts is as follows:

"The plaintiff and the defendant agree that the facts out of which this controversy arose are undisputed and are as follows, to wit:

"1. The General Assembly of North Carolina, at its regular session in 1937, enacted chapter 414 of the Public Laws of 1937, commonly known as the Scrap Tobacco Act, and said act contained, among others, the following provisions: 'Every person, firm or corporation desiring to engage in the business of buying and/or selling scrap or untied tobacco in the State of North Carolina, shall first procure from the Commissioner of Revenue of North Carolina a license so to do, and for that purpose shall file with the said Commissioner of Revenue an application setting forth the name of the county or counties in which such applicant proposes to engage in the said business and the place or places where his, their or its principal office (if any) shall be situated; and shall pay to the said Commissioner of Revenue of North Carolina, to be placed in the General Fund for the use of the State, an annual license tax of $1,000 for each and every county in North Carolina in which the applicant proposes to engage in such business. Every such license issued hereunder shall run from the date thereof and shall expire on the 31st day of May of the next year following its issue. No license shall be issued for less than the full amount of tax prescribed. Any lot of parts of leaves of tobacco, or any lot in which parts of leaves of tobacco are commingled with whole leaves of tobacco, or any other leaf or leaves of tobacco, or parts of leaves of tobacco not permitted, under the rules and regulations of tobacco warehouses, to be offered for sale at auction on tobacco warehouse floors, shall be deemed to be "scrap or untied" tobacco within the meaning and purview of this article.'

"2. The plaintiff E. B. Ficklen Tobacco Company was, prior to, and has been since the passage of the aforesaid act, a corporation duly chartered and organized under the laws of the State of North Carolina, and engaged in the purchase of leaf tobacco.

"3. The plaintiff, in the Fall of 1937, in the usual course of its business, purchased in Pitt County, North Carolina, at various times and places various lots of scrap or untied tobacco, such scrap or untied tobacco consisting of lots of parts of leaves of tobacco or lots in which parts of leaves of tobacco were commingled with whole leaves of tobacco.

"4. That there was no rule or regulation of the Tobacco Warehouses in Pitt County preventing the offering for sale at auction on such

tobacco warehouse floors scrap or untied tobacco at the time the pur-
chases mentioned in section 3 hereof were made, but no scrap or untied
tobacco was sold at auction on the tobacco warehouse floors of the
tobacco warehouses operating in Pitt County in 1937. That no pur-
chases of scrap or untied tobacco were made by the plaintiff at auction
sale on the tobacco warehouse floors in Pitt County in 1937.

"5. Acting under the provisions of the act aforesaid, a license tax of
$1,000 was assessed and demanded from the plaintiff by the defendant,
acting in his official capacity as Commissioner of Revenue for the State
of North Carolina.

"6. On the ...... day of October, 1937, the plaintiff, under written
protest, paid to the defendant the sum of $1,000 so assessed and de-
manded of the plaintiff; and within apt time, to wit, thirty days from
the date of payment, made written demand upon the defendant for the
return of the $1,000 license tax paid as aforesaid.

"7. The defendant A. J. Maxwell, Commissioner of Revenue, refused
and continues to refuse, prior to the commencement of this action, to
refund said license tax of $1,000.

"8. That the plaintiff, before commencing said action, waited the
statutory time, ninety days, before instituting this action for the recov-
ery of the said $1,000 license tax.

"Upon the foregoing facts the plaintiff and the defendant expressly
waive a jury trial and agree that if the court shall be of the opinion that
said license tax of $1,000 was properly assessed, demanded and collected,
then judgment shall be entered declaring said tax to have been lawfully
assessed, demanded and collected, and shall dismiss this action at plain-
tiff's cost; but if the court shall be of the opinion upon the foregoing
facts that the assessment, collection and payment of said tax was not
warranted by law or that the provisions of said act levying said tax are
unconsitutional, then it shall render judgment in favor of the plaintiff
and against the defendant for the recovery of the said $1,000, with inter-
est thereon from the date of the payment of said taxes, and for cost of
this action.

"Both the plaintiff and the defendant reserve the right to except to
such judgment as may be entered by the court and to appeal therefrom
to the Supreme Court. It is agreed that this cause may be heard out of
term at Snow Hill, N. C. This May ......, 1938. J. C. Lanier and
Albion Dunn, for plaintiff. Harry McMullan, Atty.-General, and T. W.
Bruton, Asst. Atty.-General, for defendant."

The judgment of the court below was as follows:

"This cause coming on to be heard before the undersigned judge of
the Superior Court at Snow Hill, North Carolina, on Saturday, 2 July,
1938, by consent of attorneys for the plaintiff and defendant, and the

case having been heard upon an agreed statement of facts and stipulation that the same might be heard by the undersigned judge at this time and place; and the case having been fully argued by J. Con Lanier and Albion Dunn, attorneys for the plaintiff, and Harry McMullan, Attorney-General, attorney for the defendant; and the same having been fully considered by the court, and the court being of the opinion that chapter 414, Public Laws of 1937, entitled 'An act to provide a tax on scrap tobacco or other untied tobacco and to license the buyers,' is in all respects constitutional and valid, and that under the agreed statement of facts submitted to the court in this case, the plaintiff was legally assessed with the tax imposed upon it by the defendant and was liable for the same;

"It is now, upon motion of Harry McMullan, Attorney-General, attorney for the defendant, ordered, adjudged and decreed that the plaintiff is not entitled to recover the sum of $1,000, or any part thereof, as claimed and demanded in the complaint. It is therefore ordered, adjudged and decreed that the plaintiff's action be dismissed, that it take nothing thereby, and that the defendant recover of the plaintiff his costs herein. J. Paul Frizzelle, Judge Superior Court."

To the foregoing judgment the plaintiff excepted, assigned error and appealed to the Supreme Court.

*J. C. Lanier and Albion Dunn for plaintiff.*

*Attorney-General McMullan and Assistant Attorneys-General Bruton, Wettach, and Gregory for defendant.*

CLARKSON, J. Is the statutory definition of "scrap or untied" tobacco so phrased that a tax based upon this definition would be unconstitutional? We think not.

Plaintiff appellant attacks the statute as being discriminatory, not uniform, unreasonable, prohibitory, vague, and not a lawful delegation of the taxing power. All of these objections are aimed at an interpretation of the statutory definition which we do not think applicable, to wit, that the mere prohibition by warehouses of the sale of a designated type of tobacco by warehouses thereby renders the prohibited tobacco "scrap or untied" tobacco and one dealing in it subject to the tax. As we interpret the legislative intent of the statute, the statutory definitions of "scrap or untied" tobacco are in fact two, rather than one, and are in effect as follows: "Any lot of parts of leaves of tobacco, or any lot in which parts of leaves of tobacco are commingled with (1) whole leaves of tobacco, or any other leaf or leaves of tobacco, or (2) parts of leaves of tobacco not permitted, under the rules and regulations of tobacco warehouses, to be offered for sale at auction on tobacco warehouse floors."

It is to be noted that both divisions (1) and (2) are objects of the verb phrase "commingled with." As so interpreted, either of the two statutory definitions of "scrap or untied" tobacco requires the presence of parts of leaves of tobacco. After laying down a practical, working definition of "scrap or untied" tobacco ("parts of leaves of tobacco, or . . . parts of leaves of tobacco . . . commingled with whole leaves"), the General Assembly again repeated this definition so as to make clear that this definition should likewise be applied when any part of the mingled tobacco is prohibited from sale by warehouse rules. The apparent intent of the General Assembly in referring specifically to the mingling of parts of leaves with types of tobacco prohibited from sale by warehouses was to make clear that the statute was intended to cover not only scrap and untied tobacco offered for sale in warehouses but also scrap tobacco which warehouses would not permit to be sold on their floors. The classification of scrap or untied tobacco by members of the trade appears to be a well recognized and precise, descriptive term, and the statutory definition as herein interpreted is in accordance with the common and general usage of the term within the trade itself. As so interpreted, there is no delegation of the taxing power to the warehouses; likewise, the interpretation here given the statute answers the charge of uncertainty and vagueness leveled at it by plaintiff.

The same presumption favors the constitutionality of a statute (*Hood, Comr. of Banks, v. Realty, Inc.,* 211 N. C., 582, 591, and cases there cited) and the innocence of a person accused of crime (*S. v. Palmore,* 189 N. C., 538). To the end that the General Assembly may be fully protected in the exercise of its powers as the accredited legislative representative of the people, the strongest degree of proof known to law—"so clear that no reasonable doubt can arise"—is required to overthrow the constitutionality of an act. *Hood, Comr. of Banks, v. Realty, Inc., supra; S. v. Brockwell,* 209 N. C., 209 (212); *Glenn v. Board of Education,* 210 N. C., 525 (529). If bad law, the General Assembly has the power to repeal it—*quo ligatur, eo dissolvitur.* This powerful presumption of constitutionality is sufficient, in our opinion, to withstand the accusation that this statute is discriminatory, unreasonable, prohibitory, and not uniform in its application; the latter objection, it may be well to point out, is met squarely by the words of the statute that it is to apply uniformly and equally to "every person, firm, or corporation" engaged in buying or selling scrap tobacco.

In selecting the objects of taxation, in the classification of businesses and trades for this purpose, and in allocating to each its proper share of the expense of government, the General Assembly necessarily has been given a wide discretion. The continued maintenance of government itself as a great communal activity in behalf of all the citizens of the

State is dependent upon an adequate taxing power. Government exists that the rights of individuals may be protected, that the opportunity may be vouchsafed to every man to carve out his destiny in a free land secure from the pressure of anti-social forces. Levies in taxes are but the fair and reasonable price at which we purchase, as citizens of North Carolina, privileges and opportunities today denied the citizens of a majority of the countries of the civilized world.

The charge that the present tax is discriminatory, unreasonable and prohibitory is difficult to answer completely. However, in view of the strong presumption of constitutionality, the rule that the collateral motives of the Legislature in levying a tax are not subject to judicial review (*McCray v. U. S.*, 195 U. S., 27; *Magnano Co. v. Hamilton*, 292 U. S., 40), and the settled view that the "power of taxation is very largely a matter of legislative discretion" and that "in respect to the method of apportionment as well as the amount it only becomes a judicial question in cases of palpable and gross abuse" (*Felmet v. Canton*, 177 N. C., 52 [54], and numerous cases cited), we are compelled to hold that there is not before us in this case sufficient proof that the instant tax of $1,000 per county annually against "scrap or untied" tobacco dealers is excessive as a matter of law. Taxes which bore heavily upon the taxpayers were upheld in *S. v. Roberson*, 136 N. C., 587; *S. v. Razook*, 179 N. C., 708; and *Express Agency v. Maxwell, Comr. of Revenue*, 199 N. C., 637. Taxation often involves the weighing of social policies and the determination of the respective values to be assigned various conflicting but legitimate business enterprises; under the doctrine of the separation of powers such functions have traditionally been allocated largely to the determination of the legislative branch of government, and, within wide limits, the determination of such matters by the legislative powers is binding upon the courts. Where a tax is levied against a business or enterprise which is clearly subject to taxation, as here, if the amount of the tax is such as to render it onerous, the primary recourse of the taxpayer is to the legislative forum; the power of this Court to deal with such matters is exceptional and unusual rather than general and ordinary.

The 1935 Scrap or Untied Tobacco Act was declared unconstitutional on the ground of vagueness and uncertainty in *S. v. Morrison*, 210 N. C., 117; the 1937 act here considered is free of the fatal shortcomings of the prior act.

After careful consideration, we find no error in the judgment below, and the same is

Affirmed.