P. M. NESBITT v. EDWIN M. GILL, COMMISSIONER OF REVENUE OF NORTH CAROLINA.

(Filed 5 March, 1947.)

**1. Taxation § 1c—**

> The word "trades" as used in Sec. 3, Art. V of the State Constitution means any employment or business engaged in for gain or profit.

**2. Same—**

> The purchase of horses or mules for the purpose of resale, at wholesale or retail, is a trade within the meaning of Sec. 3, Art. V, of the State Constitution, and the imposition of a license tax on such trade, is valid.

**3. Same—**

> In imposing license taxes on trades and professions it is not required that there be uniformity, but it is sufficient if the selection and classification of the subjects for such taxation be reasonable and just and the tax apply alike in its exactions and exemptions to all persons belonging to the prescribed class or business.

**4. Taxation § 14—**

> The $3.00 per head tax on horses and mules required to be paid by dealers purchasing such animals for resale is not a privilege tax for the right to purchase horses or mules nor an *ad valorem* tax on the animals purchased, but is merely the method prescribed by statute for the deter-

mination of the amount of license tax to be paid by those engaging in the business.

**5. Taxation § 1c—**

In determining whether a license tax is just and equitable, the fact that in levying a tax upon a particular business, such business is exempt from some other comparable tax may be considered.

**6. Same—**

The imposition of an additional license tax of $3.00 per head on horses and mules, required to be paid by dealers purchasing such animals for resale, G. S., 105-47, is a just and equitable manner for determining the amount of license tax to be paid by such dealers, based upon the quantity of business done by them, particularly in view of the fact that such sales have been exempt from the 3% sales tax and the head tax substituted.

**7. Taxation § 7—**

The license tax imposed on dealers purchasing horses or mules for resale by G. S., 105-47, both in its provisions for graduation according to the number of carloads of horses or mules purchased for resale and the head tax on such animals purchased for resale, is imposed and the exceptions to the head tax are applicable regardless of whether such animals are raised in this State or are shipped into the State from other states, and therefore the statute makes no discrimination between local or interstate commerce.

**8. Statutes § 6—**

A statute will not be declared unconstitutional unless it is clearly so.

**9. Same—**

If a statute is susceptible to two interpretations, one constitutional and the other unconstitutional, the former will be adopted.

**10. Taxation § 7: Constitutional Law § 31—**

A state cannot levy a tax which directly or indirectly imposes an undue burden upon interstate commerce.

**11. Same—**

The license tax imposed by G. S., 105-47, on dealers purchasing horses and mules for resale applies regardless of whether the animals are raised in this State or are shipped into the State, and therefore the tax is a levy on a local business and does not place a burden upon interstate commerce.

**12. Taxation § 1c—**

Under the provisions of G. S., 105-47, a dealer is exempt from the head tax on horses and mules therein imposed: (1) On horses and mules purchased from another dealer within the State who has paid the tax; (2) On horses and mules received in part payment; and (3) On horses and mules repossessed for failure of a purchaser to pay the purchase price, and such exemptions are based upon reasonable distinctions and apply to all dealers alike and therefore do not violate any provisions of the State or Federal Constitutions.

**13. Same—**

In levying a license tax upon a business or trade, transactions may be exempted from tax liability so long as the exemptions apply alike to all engaged in the business and are based upon reasonable and pertinent distinctions.

BARNHILL, J., dissenting in part.

DEVIN, J., joins in the opinion of BARNHILL, J.

APPEAL by plaintiff from *Bobbitt, J.,* at December Term, 1946, of BUNCOMBE.

This is an action to recover taxes paid under protest.

The plaintiff, a citizen and resident of Buncombe County, North Carolina, on or about 15 March, 1943, purchased seventy-eight horses from ranches located in the State of Montana, and had them shipped to him at Asheville, N. C., during the months of June and July, 1943. Thereafter, on or about 3 April, 1945, the plaintiff paid the defendant, under protest, the sum of $407.40, which represented the taxes due the State, by the plaintiff, including penalties for late filing, under the provisions of Section 115 of the Public Laws of 1939, G. S., 105-47. Demand for the refund of the tax and penalties was duly made. The defendant refused to make the refund, and this action was duly instituted.

Upon the pleadings and evidence offered in the trial below, the court held: That the tax levied by the aforesaid statute is a valid license or privilege tax upon the business of purchasing horses and/or mules for resale within the State of North Carolina; that it applies alike to purchases of horses and/or mules raised within or without the State and is applicable only to horses and/or mules purchased for resale within the State of North Carolina, and entered judgment that plaintiff recover nothing by his action and that the same be dismissed. Plaintiff appeals to the Supreme Court, assigning error.

*Lamar Gudger and Don C. Young for plaintiff.*

*Attorney-General McMullan and Assistant Attorneys-General Spruill and Moody for defendant.*

DENNY, J. The plaintiff alleges and contends that Section 115 of the Revenue Act of 1939, as amended, purporting to levy the tax involved herein, is unconstitutional, in that: (1) Purchasing horses and/or mules for resale, is not a trade or profession within the meaning of Article V, Section 3, of the Constitution of North Carolina; (2) The levy of a head tax of $3.00 upon horses and/or mules purchased for the purpose of resale exacted by subsection (a) of Section 115, of said Revenue Act, as amended, is a tax on property and as such is unconstitutional and void, being in violation of the aforesaid Section of our State Constitu-

tion; (3) The Act does not levy a head tax on horses and/or mules raised in North Carolina and is therefore, in contravention of Article I, Section 8, clauses 1 and 3, of the Constitution of the United States; and (4) The head tax levied under the Act imposes an undue burden upon interstate commerce by subjecting interstate purchases of horses and/or mules to the risk of multiple taxation and by exempting "horses and/or mules which are acquired or received as a result of an allowance for credit for horses and/or mules taken in part payment on horses and/or mules subject to the tax imposed in this section" from said tax.

The pertinent parts of Section 115, of the Revenue Act of 1939, as amended, now G. S., 105-47, read as follows:

"Every person, firm, or corporation engaged in the business of purchasing for the purpose of resale, either at wholesale or retail, horses and/or mules shall apply for and procure from the commissioner of revenue a state license for the privilege of engaging in such business in this state and shall pay for such license an annual tax for each location where such business is carried on as follows:

"Where not more than one carload of horses and/or mules is purchased for the purpose of resale . . . $25.00.

"Where more than one carload and not more than two carloads of horses and/or mules are purchased for the purpose of resale . . . $50.00.

"Where more than two carloads of horses and/or mules are purchased for the purpose of resale . . . $100.00.

"For the purpose of calculatng the amount of tax due under the above schedule, a carload of horses and/or mules shall be twenty-five (25).

"(a) In addition to the annual licenses levied in this section, every person, firm, or corporation, engaged in the business of purchasing for the purpose of resale, either at wholesale or retail, horses and/or mules shall pay a tax of three dollars ($3.00) per head on all such horses and/or mules purchased for the purpose of resale. 'Purchase' shall be taken to mean and shall include all horses and/or mules acquired or received as a result of outright purchase or on consignment, account or otherwise for resale, either at wholesale or retail: Provided, however, that 'purchases' shall not include the acquisition of horses and/or mules which are acquired or received as a result of an allowance for credit for horses and/or mules taken in part payment on horses and/or mules subject to the tax imposed in this section nor shall it include horses and/or mules which have been repossessed as a result of nonpayment of the original sales or purchase price. 'Purchases' shall include all horses and/or mules acquired for the purpose of resale, either at wholesale or retail, whether such horses and/or mules are shipped into this state by railroad or brought in otherwise. . . .

"(b) The additional per head tax levied in this section on purchase of horses and/or mules purchased for the purpose of resale, either at whole-

sale or retail, shall be due and payable immediately upon receipt of such horses and/or mules within this state."

Article V, Section 3, of our State Constitution, among other things, provides that "The power of taxation shall be exercised in a just and equitable manner. Taxes on property shall be uniform as to each class of property taxed. . . . The General Assembly may also tax trades, professions, franchises and incomes." The appellant contends that the business of purchasing horses and/or mules for the purpose of resale in North Carolina is not a trade within the meaning of the above section of our Constitution. This contention is not in accord with the uniform decisions of this Court. In defining the meaning of the word "trades," as used in the above section of our Constitution, in the case of *S. v. Worth,* 116 N. C., 1007, 21 S. E., 204, this Court said: "The word trade is often used in a more restricted sense to mean either the particular occupation of a mechanic or a merchant; but where it is used in defining the power to tax its broadest signification is given to it and it is interpreted as comprehending not only all who are engaged in buying and selling merchandise but all whose occupation or business it is to manufacture and sell the products of their plants. It includes in this sense any employment or business embarked in for gain or profit." This interpretation as to the meaning of the word "trades," as used in the above section of our Constitution, has been approved in *Mercantile Co. v. Mount Olive,* 161 N. C., 121, 76 S. E., 690; *Bickett v. Tax Commission,* 177 N. C., 435, 99 S. E., 415; *S. v. Elkins,* 187 N. C., 533, 122 S. E., 289; *Hilton v. Harris,* 207 N. C., 465, 177 S. E., 411; and *S. v. Dixon,* 215 N. C., 161, 1 S. E. (2d), 521. Hence, we hold that when a person, firm or corporation, in North Carolina, engages in the business of purchasing for the purpose of resale, either at wholesale or retail, horses and/or mules, such person, firm or corporation is a dealer in said animals, and as such is pursuing a trade within the meaning of that term as used in Article V, Section 3, of our State Constitution.

The appellant challenges the validity of the per head tax on the ground that it is a property and not a privilege or license tax, and lacks that uniformity required for *ad valorem* taxes.

Prior to the enactment of Section 115, of the Revenue Act of 1939, as amended, any person, firm or corporation engaged in the business of purchasing and selling horses and/or mules in North Carolina, was required to pay a minimum license tax of $12.50 for the privilege of selling one carload of horses and/or mules, and $5.00 for each additional carload purchased. In computing the tax twenty-five horses and/or mules were considered a carload and when a car contained in excess of that number an additional tax of twenty-five cents per head in excess of twenty-five, was required to be paid. In addition thereto, a sales tax of 3% was levied for the privilege of carrying on said business. In 1939,

the annual license and head tax, was substituted, as set forth herein, and the sales of horses and/or mules were expressly exempted from the sales tax.   G. S., 105-169, Subsection (n).

The General Assembly is not restricted to uniformity as between trades or professions in levying a privilege or license tax.   However, the tax must apply equally to all persons belonging to the prescribed class upon which it is imposed.   *Gatlin v. Tarboro,* 78 N. C., 122; *Smith v. Wilkins,* 164 N. C., 136, 80 S. E., 168; *Provision Co. v. Maxwell, Comr. of Rev.,* 199 N. C., 661, 155 S. E., 557; *Leonard v. Maxwell, Comr. of Rev.,* 216 N. C., 89, 3 S. E. (2d), 316.   If a privilege or license tax is reasonable and just, and applies alike in its exactions and exemptions to all persons belonging to the prescribed class or business, it is not objectionable under the provisions of the Constitution of North Carolina for lack of uniformity.   In *Leonard v. Maxwell, Comr. of Rev., supra, Stacy, C. J.,* in speaking for the Court, said: "In levying a sales tax as a license or privilege tax, the General Assembly may set apart certain trades, callings, or occupations for imposition of the tax and exclude others from its operation.   *Smith v. Wilkins,* 164 N. C., 136, 80 S. E., 168.   The tax may be fixed at a flat rate for some, graduated as to others, and withheld from others.   *S. v. Carter,* 129 N. C., 560, 40 S. E., 11; *S. v. Powell,* 100 N. C., 526, 65 S. E., 424.   One business may be taxed and another left untaxed.   *Carmichael v. Coal & Coke Co.,* 201 U. S., 495, 109 A. L. R., 1327.   Reasonable selection or classification of the subjects for such taxation may be made by the General Assembly and different rates or different modes and methods of assessment applies to different classes.   *Rosenbaum v. New Bern,* 118 N. C., 83, 24 S. E., 1; *S. v. Stevenson,* 109 N. C., 730, 14 S. E., 385, 26 A. L. R., 595.   A wide latitude is accorded the taxing authorities in the selection of subjects for taxation, particularly in respect of occupation taxes.   *Oliver Iron Mining Co. v. Lord,* 262 U. S., 172."

The amount of a privilege or license tax may be determined by the population of the city or town in which the business is to be conducted. Or, it may be determined by gross sales or the aggregate number of sales of a commodity handled—such as cotton.   *Albertson v. Wallace,* 81 N. C., 479, 103 A. L. R., 26n; *Smith v. Wilkins, supra.*   It has been the practice of our General Assembly for many years to levy what is considered a nominal sum for an annual license for engaging in some classes of trades and to levy in addition thereto, an additional privilege or license tax measured by some reasonable method for ascertaining the volume of business transacted in the State.   In *Albertson v. Wallace, supra,* it is said: "We see no just objection to the mode adopted for ascertaining and determining the amount of the privilege tax and making it dependent upon the extent of the business of which the amount of the aggregate purchases may be as accurate a test or measure as any

other that could be adopted. This mode of taxing is, in our opinion, eminently fair and reasonable in its operation. A specific tax of a definite sum upon a trade, without regard to the extent of the trader's operations, and pressing with the same force on one whose business is small as upon the large operator, would be very unequal. The ability to pay increases with an increased and successful business, and it is just and proper to gauge the sums to be paid upon that principle. This is what the statute undertakes to do, and no more, and it lies within the discretion of the taxing power to levy the privilege tax under this rule."

In requiring the payment of a head tax by dealers in horses and/or mules, the General Assembly did not levy a tax on the privilege or right to purchase horses and/or mules, nor did it levy an *ad valorem* tax on the animals purchased, but the statute expressly levies the tax on every person, firm or corporation engaged in the business of purchasing horses and/or mules for the purpose of resale. The General Assembly adopted this method as a fair and reasonable one for ascertaining the amount of such tax to be paid, in addition to the annual license tax. In determining whether or not the power to tax has been exercised in a "just and equitable manner," the Court may take into consideration the fact that in levying a particular license or privilege tax upon a business, such business is exempt from some other comparable tax. *Cudahy Packing Co. v. Minnesota,* 246 U. S., 450, 62 L. Ed., 827; *Maine v. Grand Trunk Railway Co.,* 142 U. S., 217, 35 L. Ed., 994; *Powell v. Maxwell, Comr. of Revenue,* 210 N. C., 211, 186 S. E., 326; *Johnston v. Gill, Comr. of Rev.,* 224 N. C., 638, 32 S. E. (2d), 30. In view of the fact that the sales of horses and/or mules have been exempted from the 3% sales tax, and the head tax substituted, we think the levy is just and equitable and not in conflict with the provisions of our State Constitution.

The appellant also attacks the validity of the head tax on the ground that the Act discriminates as between local and interstate commerce, in that, under the terms of the Act, the tax does not apply to North Carolina bred horses and/or mules. The statute provides that " 'Purchase' shall be taken to mean and shall include all horses and/or mules acquired or received as a result of outright purchase or on consignment, account or otherwise for resale either at wholesale or retail." We do not think there is any ambiguity in the above provision of the statute, but that it is clear that the aggregate amount of the head tax is measured by the number of horses and/or mules purchased for resale, except such purchases as may be expressly exempted therefrom by other provisions in the statute.

The amount of the tax to be paid at the time of obtaining the annual license is graduated according to the number of carloads of horses and/or mules purchased for resale. For the purpose of calculating the amount of the tax due under the above schedule, a carload of horses and/or mules

shall be twenty-five. We do not think the general levy is changed or limited by a further provision in the Act that "purchases shall include horses and/or mules acquired for the purpose of resale, either at wholesale or retail, whether such horses and/or mules are shipped into this State by railroad or brought in otherwise." We are of the opinion this further provision was inserted to emphasize the fact that all the horses and/or mules brought into the State may not be shipped over railroads or in carload lots, but that the tax is assessed on all horses and/or mules brought in regardless of the manner of transportation.

The appellant further contends the levy is limited to foreign bred horses and/or mules, since the head tax on the business of purchasing horses and/or mules for resale, does not become due and payable until the dealer receives such animals "within this State." However, we think this provision in the statute merely fixed the time the tax becomes due and payable and applies with equal force to purchases made within the State. It simply means a dealer is not required to pay the tax when he purchases horses and/or mules for resale until such animals come into his possession within the State, regardless of the date of purchase or the origin of the shipment.

An Act of the General Assembly will not be held invalid as violative of the Constitution unless it so appears beyond a reasonable doubt. And when there is reasonable doubt as to the validity of a statute, such doubt will be resolved in favor of its constitutionality. *Brumley v. Baxter,* 225 N. C., 691, 36 S. E. (2d), 281, 162 A. L. R., 930; *Turner v. Reidsville,* 224 N. C., 42, 29 S. E. (2d), 211; *Bridges v. Charlotte,* 221 N. C., 472, 20 S. E. (2d), 825; *Morris v. Holshouser,* 220 N. C., 293, 17 S. E. (2d), 115, 137 A. L. R., 733; *Snyder v. Maxwell,* 217 N. C., 617, 9 S. E. (2d), 19; *Tobacco Co. v. Maxwell,* 214 N. C., 367, 199 S. E., 405. If a statute is susceptible of two interpretations, one constitutional and the other not, the former will be adopted. *S. v. Lueders,* 214 N. C., 558, 200 S. E., 22; *S. v. Williams,* 209 N. C., 57, 182 S. E., 711.

The remaining question is to determine whether or not this section of our Revenue Act imposes an undue burden upon interstate commerce.

It is well settled that a State cannot levy a tax which directly or indirectly imposes an undue burden upon interstate commerce. *Gwin, White & Prince v. Henneford,* 305 U. S., 434, 83 L. Ed., 272; *Baldwin v. Seelig,* 294 U. S., 511, 79 L. Ed., 1032; 101 A. L. R., 55. This does not mean, however, that interstate commerce is to be relieved wholly of state taxation. In the case of *Western Live Stock v. Bureau of Revenue,* 303 U. S., 250, 82 L. Ed., 823, *Stone, C. J.,* speaking for the Supreme Court of the United States, said: "It was not the purpose of the commerce clause to relieve those engaged in interstate commerce from their just share of state tax burden even though it increases the cost of doing the business. 'Even interstate business must pay its way,' . . . and the

bare fact that one is carrying on interstate commerce does not relieve him from many forms of state taxation which add to the cost of his business."

The appellant is relying strongly upon the case of *Gwin, White & Prince v. Henneford, supra,* in which the State of Washington undertook to levy a tax measured by the gross receipts of the appellant derived from its business of marketing fruit shipped from the State of Washington to points outside the State, including foreign countries. The appellant was engaged exclusively in interstate commerce. The tax was held invalid because it discriminated against interstate commerce, in that it imposed upon it, merely because interstate commerce was being done, the risk of a multiple burden to which local commerce was not exposed.

In the case of *Western Live Stock v. Bureau of Revenue, supra,* the State of New Mexico levied a privilege tax of 2% of amounts received from the sale of advertising space by one engaged in the business of publishing newspapers or magazines. The appellants, who sold to advertisers outside the State, space in a magazine they published in New Mexico and circulated to subscribers within and without the State, challenged the validity of the tax on the ground that it was an undue burden on interstate commerce. The Court said: "In the present case the tax is, in form and substance, an excise conditioned on the carrying on of a local business, that of providing and selling advertising space in a published journal, which is sold to and paid for by subscribers, some of whom receive it in interstate commerce. The price at which the advertising is sold is made the measure of the tax. This Court has sustained a similar tax said to be on the privilege of manufacturing, measured by the total gross receipts from sales of the manufactured goods both intra and interstate. *American Mfg. Co. v. St. Louis, supra* (250 U. S., 462, 33 L. Ed., 1087, 39 S. Ct., 522). The actual sales prices which measured the tax were taken to be no more than the measure of the value of the goods manufactured, and so an appropriate measure of the value of the privilege, the taxation of which was deferred until the goods were sold." And in *American Mfg. Co. v. St. Louis, supra,* the Court said: "The city might have measured such tax by a percentage upon the value of all goods manufactured, whether they ever should come to be sold or not, and have required payment as soon as, or even before, the goods left the factory."

In applying the principle laid down in the above decisions, we hold the tax under consideration is a levy on a local business for the privilege of engaging in such business, and does not place a burden upon interstate commerce. *Powell v. Maxwell, Comr. of Revenue, supra.* Therefore, the risk of multiple taxation is not involved. Consequently, the further contention that the various exemptions contained in the Act make it discriminatory and in contravention of the commerce clause, is without merit.

The General Assembly has exempted those engaged in the business of buying and selling horses and/or mules from paying the head tax on certain purchases, exchanges and repossessions. The law simply provides: (1) A dealer is relieved of the payment of a head tax when purchasing horses and/or mules from another dealer within the State who has paid the tax; (2) That in selling horses and/or mules, the dealer will be exempt from paying a head tax on any horses and/or mules he may accept in part payment thereof; and (3) Such dealer is exempted from paying an additional head tax on any horses and/or mules he may find it necessary to repossess as a result of the nonpayment of the original sales or purchase price. Whether or not the General Assembly acted wisely in granting these exemptions, is not before us for decision. We do think, however, it had the power to grant them without violating any of the provisions of our State or Federal Constitution. In levying a tax for the privilege of engaging in business, certain transactions may be exempted from tax liability so long as the exemptions apply alike to all who are engaged in business within the particular classification and "reasonable and pertinent bases for said classification and exemptions are readily discernible," *Leonard v. Maxwell, Comr. of Revenue, supra. Smith v. Wilkins, supra; Mercantile Co. v. Mount Olive, supra; Cobb v. Commissioners,* 122 N. C., 307, 30 S. E., 338; *Stewart Machine Co. v. Davis,* 301 U. S., 548, 81 L. Ed., 799, 109 A. L. R., 1293.

In granting these exemptions we find no arbitrary or unjust exercise of the "power to tax" on the part of the General Assembly.

The judgment of the court below is

Affirmed.

BARNHILL, J., dissenting in part: Insofar as the majority conclude that the "per carload" privilege tax levied under G. S. 105-47 is valid and enforceable I concur. However, I cannot subscribe to the conclusion that the additional "per head" tax is a license or. privilege tax and as such is a lawful exercise of the taxing power. In my opinion it constitutes an undue and unlawful burden on interstate commerce.

North Carolina is not a stock-raising state. The number of horses and mules raised in this State for sale on the market is so negligible they constitute only an infinitesimal fraction of the total. Certainly 98% or more are shipped into the State. *S. v. Vick,* 213 N. C., 235, 195 S. E., 779. Perhaps the consciousness of this fact prompted the Legislature, in defining "purchase," to use the significant language "whether such horses and/or mules are shipped into this state by railroad or brought in otherwise"; and later to provide that the tax "shall be due and payable immediately upon receipt of such horses and/or mules within this state."

Under the taxing provision of the Act, A buys horses and mules out of the State and has them shipped into the State for resale. He must pay a franchise tax of $3 per head. He resells by carload lot to B, C, and D, dealers who purchase for resale. They pay the carload tax but pay no per head tax. Thus the purchaser whose mules are shipped into the State pays while the dealer whose source of supply is within the State does not pay.

This, in a nut shell, presents my views. The question is one of construction. If I correctly read the statute it is, as a privilege tax, so clearly in contravention of the Federal Constitution as interpreted by the United States Supreme Court further discussion or citation of authority is unnecessary. I vote to affirm as to the per carload tax and reverse as to the per head tax.

DEVIN, J., joins in this opinion.