DELPHIA E. JOHNS, plaintiff in error, *vs.* ENOCH S. JOHNS, and others, defendants in error.

[1.] Executors are trustees, and are amenable to a Court of Chancery, for the faithful discharge of their trust. Chancery has a concurrent jurisdiction with the Ordinary in holding them to security or removing them.

[2.] Receivers ought generally to be required to give security, but there are cases which might form an exception.

[3.] Receivers may be appointed before answer, when the emergency requires an immediate appointment.

[4.] When the bill prays for the appointment of a particular person as Receiver and the Chancellor appoints him, it will be presumed that he appointed him on his own judgment, and not because of the recommendation or prayer of the bill.

[5.] An injunction may go immediately against executors, prohibiting them from interference with the estate, on the appointment of a Receiver, and be- fore his acceptance, if there be no danger of loss to the estate, in the mean time.

6.] In certain cases a Receiver may be appointed without notice.

[7.] If executors find property with their testators, belonging to a third per- son, they may surrender it without suit, but in many cases for their own se- curity, it would be wisest to suffer a suit.

[8.] The Court ought to look with much scrutiny into a bill for the removal of executors. They ought not to be removed for slight causes, nor solely on the ground of poverty.

In Equity, from Lee Superior Court. Decision by Judge ALLEN, at chambers, 15th January, 1857.

*Bill for Injunction and Receiver.*

Enoch S. Johns, Sarah A. Johns, Mary A. D. Johns and Francis S. Johns, minor children of Enoch Johns, deceased, by their next friends, Thomas H. Moody and David F. Johns, filed this their bill against Delphia E. Johns, their mother, and widow of said Enoch dec'd: alleging, that said Enoch, their father, died in December, 1854, leaving his last will and testament, and a considerable estate real and personal, amongst which was a plantation and negroes. That said Thomas H. Moody, David F. Johns, and Delphia E. Johns, the widow, were appointed executors and executrix, and were all qualified.

That testator bequeathed to his wife, the said Delphia, the sum of thirty-three hundred dollars during her natural life: That he made a specific bequest of certain slaves to his son, the said Enoch S., and provided for the maintenance and schooling of John R. Price, the son of said Delphia, by a former husband; and the balance of his estate, including the life estate to his wife, he bequeathed and directed to be equally divided among all his children as they became of age or married.

The bill further alleges, that soon after the qualification of said Delphia E. as executrix, she employed counsel and made an effort to vacate and set aside said will; that being defeated in this attempt, she is now using every means to hinder and obstruct her co-executors in the execution of said will, and in the proper and profitable management of said estate. That these acts on her part arise from a claim which she makes to a portion of the property contained in said will, for and in behalf of the said John R. Price, the child of her first husband; that she has caused letters of administration to be taken out on the estate of her first husband, and the administrator has commenced suit against her and her co-executors for a portion of said property conveyed in the will of said Enoch Johns.

Johns vs. Johns et al.

The bill charges specifically numerous acts of bad faith, on the part of said Delpha E. in the management of said estate; her wish and purpose to have the sole control thereof, to the great injury and loss of complainants; the disagreement between her and her co-executors, in regard to the management of the plantation and negroes, and the employing of overseers, which has resulted greatly to the damage and detriment of the complainants. That said Delphia E. is insolvent, or at least has no property or means beyond the provision made for her by said will.

The bill prays for an injunction enjoining said Delphia E. from interfering further with said estate, and that Jonathan Davis be appointed a Receiver, to whom the said executors and executrix shall turn over and deliver the entire estate in their hands, &c.

Application for the injunction and the appointment of a Receiver was made to the Chancellor at chambers, who made the following order:

*At chambers, January 15th, 1857.*

Read and sanctioned.

Upon complainants', by their next friends, giving bond in the sum of two thousand dollars, let the State's writ of Injunction and Subpœna issue, each in the penal sum of five thousand dollars.

It is further ordered, That Jonathan Davis be, and he is hereby appointed Receiver in the terms of the prayer of the bill, and other and usual proceedings in Equity be had.

ALEX. A. ALLEN,
*J. S. C. S. W. C.*

To which order and decision, counsel for defendant excepts, and assign the same as error on the following grounds :

1st. Because the case made by the bill, is one in which Equity has no jurisdiction, either to appoint a Receiver or to grant an injunction.

4

2d. Because under the Constitution and Laws of Georgia, the Ordinary is the legally constituted supervisor of executors, administrators and guardians, and that Court has exclusive jurisdiction to remove executors, and provide for the faithful execution of their trusts.

3d. Because, said order appointing Jonathan Davis Receiver and enjoining defendant, amounts to her removal from her trust as executrix in derogation of the jurisdiction of the Ordinary.

4th. Because by said injunction and appointment of a Receiver, the control and management *of the* estate are taken from the executors and vested in another, without requiring from him bond for the faithful discharge *of his trust,* contrary to the provisions and policy of the law, touching testate and intestate estates.

5th. Because, said appointment of Receiver was made before answer.

6th. Because said appointment was made solely upon the nomination of complainants' solicitor.

7th. Because the executors by the injunction were restrained from interfering with the estate, before acceptance of the trust by the Receiver.

8th. Because said appointment of Receiver was made without notice to defendant or her Solicitor.

9th. Because said appointment was made before and without an order *nisi.* on defendant or her solicitor, to show cause against said appointment.

SLAUGHTER & ELY, for plaintiff in error.

F. H. WEST, for defendants in error.

*By the Court.*—McDONALD, J. delivering the opinion.

This bill was filed by the infant children of the testator, by their next friends, Thomas H. Moody and David F. Johns, against the executors of the will of Enoch Johns, of whom

Delphia E. Johns is one, Thomas H. Moody and David F. Johns are the other executors.

The bill prays an Injunction against the executors, enjoining them "from exercising any other or further control or power over the property or effects of the estate." It also prays the appointment of a Receiver. A Receiver was appointed and an injunction was granted. Exceptions are taken to the order of the Judge, making the appointment of Receiver and granting the injunction.

[1.] In regard to the question of jurisdiction raised by the exceptions, it may be remarked that executors are trustees, and as such, are amenable to a Court of Chancery for the faithful execution of their trusts. That Court here exercises in such cases a concurrent jurisdiction with the Ordinary, as it does in England with the Spiritual Court. *Middleton vs. Dodwell,* 13 *Ves. Jr.* 268. The Ordinary has power to compel an executor to give bond with approved security for the faithful execution of his trust, when it is made to appear to him, that the executor is in insolvent circumstances, and that the estate is likely to be wasted by his improper conduct. *Cobb* 314. The Judge of the Superior Court has the like power, on application of any devisee, legatee or creditor, who shall establish a charge of neglect or malpractice against such executor. *Cobb* 307. The executor may be superseded or dismissed if he fails to give such security. *Ib.* 307, 317. The same matters are within the ordinary jurisdiction of a Court of Chancery. If the Court had jurisdiction and its power was rightfully exercised, whatever its effect may have been upon the party complaining, it was no encroachment upon the jurisdiction of the Ordinary.

[2.] It would perhaps be best to require of a Receiver bond with good security in all cases. Where the parties in interest, however, apply for his appointment, and are in all respects capable of judging of the competency and responsibility of the person appointed, they may unquestionably waive it, but in the case of infants, the chancellor ought to

look closely into the matter, and see that their interests are
secure, and if the Receiver is not entirely responsible, securi-
ty ought to be required.    There should be no risk of loss.

[3.] Where the emergency is such as to render it essential
to justice that a Receiver should be immediately appointed,
the appointment may be made before answer.    To delay it,
might enable the defendant to defeat the object of the appli-
cation.

[4.] It does not follow, that because the bill prayed for the
appointment of a particular person as Receiver, he was ap-
pointed on that sole recommendation.    The Chancellor must
be presumed to have acted on his own judgment.

[5.] The prayer of the complainants is that the defendants
be enjoined from exercising any power or control over the
property or effects belonging to the estate, by reason of their
having been appointed executors and executrix.    Whether
the Receiver accepted his trust or not, the property was in
the proper custody under the will at the time.    The will was
loosely and carelessly, and, I presume, hastily written, when
the testator was *in extremis*, from the fact, that it was proven
in the Court of Ordinary four days after it was executed.  It
is manifest however, that his widow and his children were
to remain on the plantation, and have possession of all the
property until the executors deemed it their duty to sell it for
the purpose of making distribution, or should desire to dis-
tribute it without sale.    There was no danger to the estate,
therefore, from the immediate operation of the injunction.

[6.] The general rule is that a Receiver will not be ap-
pointed without notice.    But it is not without exception, and
when irreparable injury might be sustained by the delay, the
appointment may be made without.    *Smith Ch. Pr.* 630 *note.*
We think there was no such danger in this case, and notice
ought to have been given.

Does the bill itself make a case in which a Receiver ought
to have been appointed?

One ground of complaint is, that she moved to set aside

the will, on the ground, as she insisted, that a part of the property willed, belonged to her child, —— Price, by a former marriage.

[7.] She abandoned that effort, because a motion was made to discharge her from the executorship on account of it; but she still pursues her object, and has caused administration to be taken out on the estate of her first husband. The administrator has sued for some of the negroes, and she furnishes information to sustain the suit. As inconsistent as this conduct is, apparently, with her duty to her trust, as executrix of the will of her last husband, it may be susceptible of a satisfactory explanation, and shows how proper it was for her to have had notice of the application for a Receiver.

Suppose it be true, that, within her knowledge, a part of the negroes of whom her last husband died in possession, does belong to the estate of her first husband, and by a misconstruction of her duty, she took a step which she subsequently abandoned, it cannot be set to her charge as a breach of trust. She did abandon it, and does not now entertain a position, in that respect, of hostility to the estate of Johns. But it is said she promotes a measure for the recovery from the estate of which she is executrix, of a part of the negroes. If the negroes sued for belong to the party suing, and not to the estate, it would be best for the estate which she represents, but not for the executors themselves, to give them up without a suit, for the expenses of the suit would be saved to the estate. The necessity of a suit in such cases, is the protection of the executors, who might not have it in their power to establish a title in the demandant, when called to account by the legatees. It would be better for the estate of Johns, if it has not the title to the property, to have that matter settled at once, than to have it postponed and be forced to account, at last, for heavy damages for the illegal detention of the property.

The bill does not set forth the names of the negroes claimed by the administrator of Price's estate, but alleges that the

suit is for the recovery of a portion of the negroes conveyed by the said will to the complainants. The only negroes conveyed by name in the will, are those bequeathed to his son.

In the eighth item of his will, the testator wills and bequeaths all the residue of *his* property both real and personal to the complainants. Under this clause of the will, they claim to have the title to the property sued for by Price's administrator. Now it is clear that if the property belonged to Price's estate, although it may have been in the testator's possession at the time of his death, it is not conveyed by the will, for the testator wills and bequeaths all the residue of *his* estate. Suppose the testator knew that the property did belong to others, and not himself, it is not to be presumed that he intended to pass it by his will. But if a testator disposes of property by will to which he has no title, the executors are not bound to stand a suit for it, except for their own protection and to facilitate the proof of a *better title* when called to account at a remote period. The bill no where charges that the claim set up by Price's administrator is false or unjust, nor does it allege that the executrix has lent herself to the establishment of a fraudulent claim of a part of the testator's property, or combined with others to give effect to such claim. Were she to do that, she would be unquestionably guilty of a gross breach of trust, and ought to be instantly removed.

[8.] The bill says nothing of the objections made by the executrix to the overseer employed by one of the executors, so that the Court cannot judge of them. But it discloses the fact, that, however just they may have been, she yielded, and in conjunction with the executor Moody, employed "a good" overseer before the entire crop was planted. The crop of that year was a very small one, and the executrix may have supposed that the overseer having been employed at so early a period, the reason assigned for its failure was not a very substantial one. The contest about overseers was renewed at the end of the year, and from the facts stated in the bill, it

is not very certain which of the executors, all of whom must have had the confidence of the testator, is to blame. It appears that the testator committed the management of his estate to the three executors; and not to one or two of them to the exclusion of the rest. They ought to harmonize and unite in counselling on all matters relating to the interest of the estate. He did not confide to one more than another. It is disclosed in the bill, that one of the executors employed another to take charge and manage the estate as overseer, and that, without consultation with the executrix. The executor employed had as much right to assume the management of the estate, as to lay aside the character of executor, and contract with his co-executor for it, who, singly had no more authority than himself. The executrix had a right to object. Her promise to Moody to give up the management to him amounted to nothing. To make such promise after qualifying as executrix, was wrong.

The running away of the negroes, against the will of the executrix, cannot, certainly, be charged against her as a breach of trust. She is making every effort by the employment of men, suitably equipped, to capture them. Her co-executors are quiet and unconcerned, it is to be inferred, in regard to the matter and are indifferent to their recovery.

Her insolvency is no ground, of itself, for removing her from the executorship. Her condition does not appear to have been changed, since her appointment as executrix. The testator reposed confidence in her as she is, and she will not be removed merely on account of her poverty, nor even for slight causes.

We think the Court erred in making the appointment of Receiver upon the facts alleged in the bill, and as the Injunction was granted, no doubt, to enable the Receiver appointed to carry out, without disturbance, the object of his appointment, it must fall with it.

If there are no more specific charges of mismanagement made by amendments to the bill and supported by affidavits,

the cause must go before the jury, after answer, and at the hearing upon the proofs, the Court may decree according to the right and justice of the case. If the executrix has been guilty of waste, negligence, mismanagement, or has, without justification, produced the difficulties suggested in the bill, all the circumstances will be examined into, and such a decree will be rendered as shall protect the estate from loss. The testator did not entrust the management of his estate to the separate judgment of his executors. If from disagreement amongst them, the estate is exposed to injury, such proceeding ought to be against them, either by the Ordinary, or in chancery, as will secure the interest of his infant legatees, and as this cause is now pending, a full enquiry can be made.

Judgment reversed.