*J. P. Carson* and *Stone & Clark*, for plaintiff in error.
*Berner & Bloodworth*, contra.

---

### TURNIPSEED *et al. v.* KENTUCKY WAGON COMPANY *et al.*

*Lumpkin, J.*—Irrespective of other questions involved, this case is controlled by that of *Stillwell, Millen & Co.* v. *Savannah Grocery Co. et al.*, 88 *Ga.* 100; and under the doctrine there laid

down, the unconditional appointment of a receiver was erroneous, it appearing that the purchaser of the property, to whom the alleged fraudulent conveyance and bill of sale were made, was solvent and able to respond to any judgment which might be obtained against him by the complaining creditors in the event they should establish that the conveyance and bill of sale were in fact fraudulent and void as to them.

August 5, 1895.                                      *Judgment reversed.*

Injunction and receiver.    Before Judge Beck.    Henry county.    May 8, 1895.

On February 28, 1895, M. H. Turnipseed conveyed to M. W. Akin, by deed reciting a consideration of $1,100, a house and lot with outhouses on two and a half acres of land in the town of Hampton, known as the home place of W. W. Turnipseed, deceased; also a lot and tenant house, containing one fourth of an acre, in the same town; also a two-story brick building and lot on which it is situate, in the same town, known as the W. W. Turnipseed paint shop and repository; and 60 acres of land in the Hampton district of Henry county, known as the Middleton place. The deed was recorded on March 4. On March 1, the same vendor made to the same vendee a bill of sale in consideration of $2,060.27, conveying numerous items of personalty consisting of wagons, buggies, timber, coffins, etc.; this instrument reciting: "the same being all the stock, tools, &c., now in the four houses occupied by me in carrying on a general wagon, buggy and repair business under the name of Turnipseed Brothers; but I am the only member of said firm—in fact the same is not a firm, but I alone am running said business using the name of Turnipseed Brothers, and the same is my property; to have and to hold the same to him the said M. W. Akin, his heirs and assigns, forever in fee simple." This was recorded on March 5. On April 1, a petition was brought by several creditors of Turnipseed Brothers (a firm alleged to have consisted of M. H. Turnipseed, T. C. Turnipseed and M. F. Turnipseed, until recently when T. C. Turnipseed had died, the

business having been continued and managed by the survivors), and against M. W. Akin.   Petitioners alleged, that they were unsecured creditors of Turnipseed Brothers by notes and accounts, and represented one third of the unsecured debts of said firm of traders, who were insolvent. The conveyances before mentioned were attacked as having been made for the purpose of hindering, delaying and defrauding petitioners and other creditors of Turnipseed Brothers, and as without consideration.   It was further alleged that said firm were still in possession and control of the realty and personalty so conveyed, and were rapidly disposing of the property and not applying any of the proceeds to the payment of the debts of the firm.   Among other things, there was a prayer for injunction and receiver.   An answer was filed by M. F. Turnipseed, stating that he was never a member of the firm of Turnipseed Brothers, and was only sixteen years of age and not competent to contract.   A joint answer was made by M. H. Turnipseed and Akin, the nature of which will appear from the statement of the evidence, hereafter appearing.   The judge appointed a permanent receiver, and ordered that defendants turn over to him all the property and assets of M. H. Turnipseed; and that he make and file a complete inventory of the same.   Defendants excepted.

Plaintiffs introduced the affidavit of Dun, agent of one of them, that the account attached to the declaration is correct; that he had a conversation with M. H. Turnipseed at Hampton on April 10 and 11, 1895, in which Turnipseed said the indebtedness of Turnipseed Brothers did not exceed $1,000, and the assets of the firm amounted to $9,000; this amount included the estate of T. C. Turnipseed deceased, who was a member of said firm and whose estate was represented in the firm.   He also said that all of these assets were sold and transferred to Akin to secure him against loss by reason of his suretyship on Turnipseed's bond as administrator of the estate of his father (W. W.

Turnipseed); also, that he and his brother T. C. Turnipseed were on his mother's bond as guardian of their brother M. F. Turnipseed; that since his mother's death several years ago, no guardian had been appointed for said brother, and his estate has been used in said business without any bond, and he is indebted to his younger brother, in the manner stated, to the extent of $2,800, which went into his hands as assets of said firm and has been so used.

Also, affidavit of McCracken: He understood the firm of Turnipseed Brothers to be composed of M. H. Turnipseed, T. C. Turnipseed and M. F. Turnipseed. He is agent of the Roger Wheel Co., one of plaintiffs. Most of the articles in said company's account against Turnipseed Brothers are wheels sold them; a great many of the same were on wagons and buggies sold by M. H. Turnipseed to Akin. M. H. Turnipseed told him, March 5, 1895, that the liabilities of said firm were not more than $1,100 or $1,300, and that the deed and bill of sale were given to indemnify Akin against loss by reason of his suretyship on his administrator's bond, and was not to interfere in any way with the running of said business; that the assets of the firm were between $5,000 and $6,000, and would not be troubled long by said deed and bill of sale.

Defendants introduced the affidavit of Akin. He purchased the property in good faith and without any fraud or intention to hinder or delay creditors. He is security on the bond of M. H. and T. C. Turnipseed, administrators on the estate of W. W. Turnipseed; and whatever is due the creditors of said estate and heirs at law by said administrators will have to be paid by him; he is the only solvent security on the bond; there is no property of the estate in the hands of the administrators, and they have no property or means with which to pay the same; all other securities on the bond are insolvent, and all the loss will fall on him; he is perfectly solvent and able to respond. Seeing that he would have to pay for the default of the administrators and

fearful of loss on account of the same, he took from M. H. Turnipseed the bill of sale and deed in this case; they were made for the express purpose of securing him against loss as security on said administrator's bond; the price agreed upon for said property was fair and reasonable; and it was agreed between said parties that he was to take said property and pay off all liabilities of M. H. Turnipseed as administrator, for which he as security was or might be liable in law, together with all expenses, costs and attorney's fees that might be incurred by him on account of the same; and it is necessary for him to sell said property in order to get money to pay said debts, as they are pressing; he needs said property now, in order to settle same. He does not know the exact amount for which he will be liable on said bond, but his attorney is now investigating his said liability, and he will pay only so much as he is in law bound to pay. He fears that there will not be enough of said property to secure him against loss; the whole of it is not worth over $3,500; this includes the notes and books of account; and he is willing to take that sum for it. M. H. Turnipseed has not been carrying on said business or any other since the date of said deed and bill of sale, but at said date deponent took possession of the same and has been in possession ever since. Some of it he sold to W. P. Wilson, and Turnipseed has had no control over any of it since said sale, except to sell it for deponent; he was simply authorized to work it off and convert it into money for deponent, and has had nothing more to do with any of said property since said sale.

Also, the affidavit of M. H. Turnipseed to similar effect, and as follows: T. C. Turnipseed has no estate, and deponent has no means or property with which to pay the liabilities on his bond as administrator. He is being sued on several debts of W. W. Turnipseed, and has nothing with which to pay them. When W. W. Turnipseed died, neither deponent nor T. C. Turnipseed had any property,

and with the property and stock in trade belonging to W. W. Turnipseed they commenced the business under the name of Turnipseed Brothers, neither of them putting in any money, but the same was carried on exclusively with the property and money belonging to W. W. Turnipseed's estate. On May 24, 1893, T. C. Turnipseed died. Deponent still carried on the business in the name of Turnipseed Brothers, up to the time the bill of sale was made; but there was no firm or partnership, he being the only one interested and the sole owner of the business. After the death of W. W. Turnipseed, deponent and T. C. Turnipseed took an invoice of the stock on hand and charged it up to themselves in their returns, but never paid the money for the same into the estate. The business was not profitable, and he found himself unable to make good to the estate the funds that he and T. C. used in the business. He as administrator sold the shops, tools and other property, and also all the estate deeded to Akin, except the 60 acres of land, and the same was bought for him; and while he charged the same up to himself in his returns, he never paid the money therefor into the estate. Said real estate belonged to W. W. Turnipseed at the time of his death, and was never the property of Turnipseed Brothers. The heirs at law of W. W. Turnipseed were, his widow, T. C. Turnipseed, M. H. Turnipseed, M. F. Turnipseed, and the children of Garrison, five in all. The widow and T. C. Turnipseed have since died. Deponent may have made statements to his creditors, to the effect that the assets turned over to Akin would amount to more than Akin's indebtedness on the bond; but in making said statement, he estimated the notes and accounts at their face value, which would be an improper estimate, as these claims are not worth face value. He never told any one that the property of Turnipseed Brothers was worth $9,000.

Defendants also introduced the administrator's bond, dated December 7, 1891, for $50,000, on which Akin,

J. M. Nipper and Mary R. Turnipseed were securities. Also, the annual returns of M. H. and T. C. Turnipseed,. administrators, showing that as such they were in debt to the estate $5,882.83. Also, a suit pending in the county court, in favor of T. F. Garrison, guardian, *v.* M. H. Turnipseed, administrator, claiming $220.16 besides interest on a note. Also, suit in superior court, in favor of Norcross Mfg. Co. *v.* said administrator and the securities on his bond, claiming $342.37 on a judgment rendered against the administrator, the execution from which bore a return of *nulla bona.* Also, an accepted draft against W. W. Turnipseed in favor of Haydock Brothers, for $57.50 besides interest. Also, appraisement of the estate of W. W. Turnipseed, showing that it was valued at about $25,000. Also, a receipt showing that M. H. Turnipseed had turned. over to Akin notes and accounts amounting to $1,060.27,. and one safe, as collateral security for any discrepancy in the settlement of Akin's liability to W. W. Turnipseed's estate, dated March 4, 1895. Also, deed from M. H. Turnipseed, administrator, to R. J. Arnold, in consideration of $1,228, dated January 2, 1894, and conveying all the real estate described in the deed from Turnipseed to Akin, except the sixty acres of land; and deed from R. J. Arnold to M. H. Turnipseed, conveying the same property in consideration of $1,228, dated April 11, 1894.

*E. J. Reagan* and *J. F. Wall,* for plaintiffs in error.

*Hammond & Cleveland, J. S. Boynton, W. C. Beeks* and *Patterson & Kimbrough,* contra.