BENTON *v.* TURK *et al.,* executors, *et al.*
TATE *et al. v.* TURK *et al.,* executors, *et al.*
HUDSON *et al.,* executors, *v.* TURK *et al.,* éxecutors, *et al.*

712

Nos. 12807, 12808, 12809.   September 16, 1939.

714

720

*Smith & Smith, Tye, Thomson & Tye,* and *John S. Wood,* for plaintiffs in error.

*Kennedy, Campbell & Therrell, Hirsch & Smith, Philip Weltner, Morris & Welsch, G. Lyle Jones,* and *Roscoe Pickett,* contra.

BELL, Justice. (After stating the foregoing facts.) We will first consider the questions presented by the writ of error in which L. O. Benton Sr. is the plaintiff in error.

■ Being of the opinion that the suit by the heirs at law was subject to demurrer as failing to state a cause of action, we begin by the process of elimination, though the process will not be continued through everything that follows. The petition of the heirs at law, as amended, shows on its face that the deceased left a will which has been probated in common form; and that no application to probate the will in solemn form has been filed. Although it appears that some of the plaintiffs were named as legatees in the will, they do not sue as legatees, but expressly claim as heirs at law, alleging even that the testator was insane at the time of executing the will, and that the judgment probating the will in common form was obtained by fraudulent representations and suppression of facts relating to testamentary capacity. A will may be proved in common form and admitted to record upon the testimony of a single subscribing witness, and without notice to any one. Code, § 113-601. Such a probate is binding upon the heirs at law so long as it stands, and it is not subject to collateral attack. *Maund* v. *Maund,* 94 *Ga.* 479 (20 S. E. 260) ; *Phillips* v. *Rentz,* 106 *Ga.* 249 (32 S. E. 107) ; *Murray* v. *McGuire,* 129 *Ga.* 269 (58 S. E. 841) ; *Turner* v. *Holbrook,* 145 *Ga.* 603, 606 (89 S. E. 700) ; *Harris* v. *Adams,* 150 *Ga.* 204 (103 S. E. 229) ; *Anglin* v. *Hooper,* 153 *Ga.* 734 (113 S. E. 195) ; *Moody* v. *McHan,* 184 *Ga.* 740 (193 S. E. 240). Accordingly, under the facts of this case the heirs at law, as such, do not show any right to sue. This conclusion is not altered by the fact that the plaintiffs seek to have the judgment probating the will set aside and canceled as void for alleged fraud upon the court, relating to *mental capacity* of the testator. While it has been held that a judgment probating a will in common form may be set aside in a court of equity for fraud relating to *jurisdiction* (*Abercrombie* v. *Hair,* 185 *Ga.* 728 (2), 196 S. E. 447), yet, since the court of ordinary has sole and exclusive jurisdiction to determine the issue devisavit vel non

(Code, § 24-1901), a party can not challenge the probate upon any ground relating to that issue except in such court of ordinary, and can do so there only in a proceeding to probate the will in solemn form. If the probate of the will in solemn form is refused, the effect is to set aside the probate in common form and declare an intestacy. *Hooks* v. *Brown,* 125 *Ga.* 122 (53 S. E. 583); *Stroup* v. *Imes,* 185 *Ga.* 422 (2) (195 S. E. 411). The rule that equity seeks always to do complete justice will not bring into equitable jurisdiction matters over which another court has *exclusive* jurisdiction. Code, § 37-105. *Jones* v. *Dean,* 188 *Ga.* 319 (3 S. E. 2d, 894).

The suit was not brought for the purpose of protecting any alleged right of the plaintiffs pending determination of the issue devisavit vel non in a proper proceeding, nor are the plaintiffs suing in the alternative capacity of devisees or heirs at law. Therefore the case is different from *McGehee* v. *Pope,* 167 *Ga.* 622 (146 S. E. 455). So far from suing as legatees, the plaintiffs even attempt to repudiate the will in its entirety. Manifestly, in these circumstances, the suit could not be sustained on the theory that some of the plaintiffs might be interested as legatees. *Adams* v. *Johnson,* 182 *Ga.* 478 (185 S. E. 805); *Griffith* v. *Moore,* 185 *Ga.* 120 (5) (194 S. E. 551). It follows from what has been said that the suit by the heirs at law did not furnish sufficient basis for adding L. O. Benton Sr. as a defendant. The court erred in making him a party over appropriate objection, and in overruling his general demurrer to the petition.

■ We entertain a different view of the creditors' suit. In our opinion, the petition in that case, as finally amended, was sufficient to state a cause of action, and thus to withstand the objections and demurrer filed by L. O. Benton Sr. It appears from the allegations that the following contentions were made by the creditors in reference to the stock certificate: (1) that the certificate was delivered only as security for a loan of $10,000, and was not an absolute sale; (2) that if the transfer was intended as a sale, it was invalid because of great inadequacy of consideration joined with great disparity of mental ability in the contracting parties. Compare *Pye* v. *Pye,* 133 *Ga.* 246 (65 S. E. 424). The petition further alleged that the stock was worth in excess of $500,000, and that without this asset the estate of Sam Tate would be insolvent

and wholly inadequate to pay the claims of plaintiffs and others similarly situated, the other assets being of the value of only about $15,000, with debts of over $400,000. The transferees of this stock certificate are asserting absolute ownership, and have sought to have the certificate transferred upon the books of the company, which is a large and going corporation in which the stock represents the majority or controlling interest. Steve Tate, one of the transferees, is an executor of the estate of the transferor, and the other executors are taking no steps against the claims asserted by him in regard to this stock. The plaintiffs extended credit to Sam Tate on faith of his ownership of this stock, and it is necessary that the assets of the estate be taken in charge by a representative who will protect and preserve the assets against the efforts of Steve Tate to claim the stock as the property of himself and of his sister and brother-in-law. As to L. O. Benton Sr., it was alleged, by amendment, that the stock certificate had been transferred by L. O. Benton Jr. to his father, for all or part of the $25,000 advanced to Sam Tate, and that L. O. Benton Sr. does not purport to be the owner of the stock, but holds it only as security for whatever part, if any, of the $25,000 he may have furnished. The plaintiffs do not dispute the right of L. O. Benton Sr. to reimbursement accordingly, but they say that he has no further right or equity to or against such stock certificate. The prayers of the petition were for injunction to prevent any transfer or disposition of the stock certificate; that the stock be impounded in the registry of the court; that title to the stock be decreed to be in the estate of Sam Tate; and for general relief. In the amendment it was prayed that L. O. Benton Sr. be made a party defendant; that a receiver be appointed for the estate of Sam Tate, including the stock certificate, that L. O. Benton Sr. be required to set up in this suit any claim he may have with respect to the certificate, and that the court adjudicate and determine the sum advanced by him as a loan thereon, to be paid by the receiver out of the assets of the estate; also that L. O. Benton Sr. be likewise enjoined from disposing of the certificate or encumbering the same; and for general relief.

Equity by writ of injunction may restrain any act of a private individual or corporation which is illegal or contrary to equity and good conscience, and for which no adequate remedy at law is provided. Code, § 55-101. When any property may be in litigation,

and the rights of either or both parties can not otherwise be fully protected, a receiver of the same may be appointed on a proper case made. § 55-301. While the power of appointing receivers and granting injunctions should be prudently and cautiously exercised, and such relief should be granted only in clear and urgent cases (§ 55-303), it is expressly provided (§§ 55-302, 55-305) that equity may appoint receivers to take possession of trust property whenever there is danger of loss or destruction, and may appoint a receiver to take possession of and hold subject to the direction of the court any assets charged with the payment of debts, when there is manifest danger of loss or destruction or material injury to those interested. A court of equity has concurrent jurisdiction over the settlement of accounts of administrators (§ 113-2203), and may grant relief "upon application of any person interested in the estate where there is danger of loss or other injury to his interest" (§ 37-403). The petition in this suit by creditors did not allege that any of the transferees or claimants of the stock certificate were insolvent. In a suit only between a creditor and a fraudulent transferee, such an omission might prevent the grant of extraordinary relief such as the appointment of a receiver. *Blanchard* v. *Atlanta Casket Co.*, 184 *Ga.* 722 (193 S. E. 178). In the instant case, however, one of the transferees is an executor claiming adversely to the estate represented by him. According to the allegations his claim is unfounded, and unless it is defeated the estate will be rendered insolvent. The other executors are taking no steps to protect the estate against such claim, and refuse to do so. The stock is valuable, and represents the majority or controlling interest in a going corporation. In view of these facts and the others alleged, we think the petition stated a cause of action for adjudication of the title to this stock certificate, and for injunction and receiver pending such determination. Under the facts' the plaintiff creditors were justified in proceeding for their own protection, instead of depending upon the executors. See *Johns* v. *Johns*, 23 *Ga.* 31; *Graham* v. *Fuller Electrical Co.*, 75 *Ga.* 878 (2); *Wolfe* v. *Claflin*, 81 *Ga.* 64 (6 S. E. 599); *Story* v. *Hogsett*, 147 *Ga.* 739 (95 S. E. 231); *Clements* v. *Fletcher*, 154 *Ga.* 386 (114 S. E. 637); *Spooner* v. *Bank of Donalsonville*, 159 *Ga.* 295 (125 S. E. 456); *Clark* v. *Clark*, 167 *Ga.* 1 (144 S. E. 787).

■ There is no allegation that L. O. Benton Sr. knew of or

participated in any of the wrongs charged against the other defendants, or that he was doing or threatening to do anything improper in regard to the stock certificate. So far as appears, he acquired the stock certificate innocently, as security for a debt, and is not asserting any other claim over it. In these circumstances, it is contended that he should not be required by *interlocutory* order to surrender the stock to the receivers merely because of alleged misconduct on the part of the executors and of the transferees under whom he claims; and that in no event should his possession be disturbed in the absence of payment or tender of the debt for which he took the stock certificate as security. A judge of the superior court is authorized, in a proper case, to appoint a receiver upon interlocutory hearing. In such a case, he merely takes the property in custodia legis for the purpose of preserving the status until a jury can pass upon the case. *Wolfe* v. *Claflin,* supra. The purpose of an interlocutory receivership "is to preserve the property contested for pendente lite until the final disposal of all questions, legal or equitable, involved in the action." *West* v. *Mercer,* 130 *Ga.* 357, 360 (60 S. E. 859). Accordingly, there is no merit in the contention that the action of the court was erroneous merely because it was taken upon an interlocutory hearing. It has been held that a *pledgor* is not entitled to recover his pledge from one to whom his pledgee has assigned it, unless he pays the debt secured by the pledge or tenders payment, or the facts shown excuse a tender. *Payne* v. *Power,* 140 *Ga.* 759 (79 S. E. 771). In *Booth* v. *Atlanta Clearing-House Association,* 132 *Ga.* 100 (5) (63 S. E. 907), the same principle was applied to the creditors of the original pledgor, "no special reason being shown why it was necessary, for the protection of the rights of any one," for the court to take the collateral and place it in the hands of a receiver. These and other decisions to the same general effect were cited and relied on by counsel for the plaintiff in error. We do not think the principle thus invoked could be properly applied in the instant case. The plaintiffs are suing merely as creditors in behalf of themselves and others similarly situated. They have received nothing from any of the defendants, and do not seek to recover the property unto themselves. While the plaintiffs in the *Booth* case did not seek a direct recovery, they attempted to invalidate the pledge itself, and to have the collateral treated as if

received without consideration. They were not willing to do equity. In the present case the plaintiffs are recognizing the equities of all concerned, and are merely asking that the stock be adjudged the property of the estate, subject to any pledge justly made. In Wyss v. Grunert, 108 Wis. 38 (83 N. W. 1095), it was held that "The doctrine that a person can not rescind a contract or sue for money or property parted with thereon, on the ground of fraud, without returning to his adversary what he himself received on it, refers to the relations between the parties to the contract, and not to the rights of strangers thereto." Furthermore, if the plaintiffs had ascertained the amount due to L. O. Benton Sr., and had made a tender thereof, they would not have been entitled themselves to the custody of the stock certificate, but in that event it should have gone either to a receiver or to the persons from whom Benton received it. Clearly it would be inequitable to require the plaintiffs to tender the sum due, when they could not claim the reciprocal right of receiving the collateral upon such payment.

Again, as was said in *Smith* v. *McWhorter*, 173 *Ga.* 255 (160 S. E. 250) : "The statements of the petition (which for the purposes of demurrer are admitted to be true in so far as well pleaded) show that the petitioner is at least entitled to an accounting for the purpose of determining the exact nature and binding force of the several transactions set forth as causes of action, in order to discover the exact status of the respective accounts of each party, and thereafter reach by comparison the correct result which should be embodied in a finding and decree of the court." See also *Napier* v. *Adams,* 166 *Ga.* 404, 410 (143 S. E. 566). Nevertheless, was it not the right of L. O. Benton Sr. to retain custody and control of this stock certificate until payment of his debt, since it was not alleged that he intended to make any unlawful disposition of it? In view of other facts alleged, we can not say that the judge erred in ruling on this question in the negative. Without judicial interference, the stock was subject to redemption at any time by the other defendants, and the fair assumption is that on payment of the debt the certificate would have been delivered *to them*. This would have placed the certificate in the hands of the original transferee, with the possible result that the main object of the suit, which was to protect the stock against the alleged unlawful claims of these defendants, would have failed. Accordingly, we can not sus-

tain the contention that the petition did not state a cause of action for a receiver as against L. O. Benton Sr. Nor is there occasion here for application of the principle that injunction, the office of which is merely to restrain, does not afford a remedy for the transfer of possession of property from one person to another pending a determination of their respective claims. *Vaughn* v. *Yawn,* 103 *Ga.* 557 (29 S. E. 759). The plaintiffs did not seek a transfer of the possession of this stock from one litigant to another, but asked that it be taken into the *custody of the court* through the agency of a receiver. The petition accords to Benton his right to have the stock applied first toward the payment of his debt, and the court would be authorized under the pleadings to protect his lien to its full extent. The purpose of the petition is to conserve the excess for the benefit of other creditors, and that without injury to him.

■ There is no merit in the contention that even if the petition showed that the estate of Sam Tate, deceased, was entitled to relief, the cause of action, if any, was in the executors, and not in the plaintiffs. As stated in the second division of this opinion, the plaintiffs in the creditors' suit alleged such facts as to entitle them to maintain the action. The general rule invoked is subject to exception in case of collusion, unwillingness to collect assets, or other like special circumstances (*Denny* v. *Gardner,* 149 *Ga.* 42, 99 S. E. 27; *Battey* v. *Meyerhardt,* 157 *Ga.* 800 (2), 122 S. E. 195), and the petition here presents a case within the exception.

■ It is contended further, that the creditors can not sue as in this case, for the reason that they have not recovered judgment and do not pray for judgments upon their claims. In this connection the plaintiff in error cited a number of cases, including *Cunningham* v. *Williams Co.,* 135 *Ga.* 249 (69 S. E. 101); *Lowry Co.* v. *Kilpatrick,* 157 *Ga.* 91 (2) (120 S. E. 772); *Boone* v. *Taylor,* 185 *Ga.* 433 (195 S. E. 761): none of which are deemed by this court to be applicable. The Code, § 113-1526, provides that no suit to recover a debt due by a decedent shall be commenced against the legal representative until the expiration of twelve months from his qualification. In the absence of waiver, which is not to be presumed, this law would have prevented the plaintiffs from suing to recover judgments upon their debts; and yet it would not require them to refrain from all action to protect their interests. *Lester* v. *Stephens,* 113 *Ga.* 495 (4) (39 S. E. 109). Under the facts

appearing, the petition was not subject to demurrer on the ground that the plaintiffs' debts had not been reduced to judgment, and that no judgments were prayed.

■ In view of what has been said above, there is no merit in the contention that L. O. Benton Sr. was improperly made a party defendant; nor did the court err, for any reason assigned, in overruling the general demurrer thereafter filed by him. "Any person claiming equitable relief may make all necessary parties to secure equitable relief, either at the beginning of his suit or afterwards by amendment." Code, § 37-1005. The suit was properly brought in Pickens County, where some of the defendants resided against whom substantial equitable relief was prayed; and since the relief thereafter sought by amendment against L. O. Benton Sr. was germane to the original petition, the plaintiffs had the right to make him a party defendant, notwithstanding he resided in a different county. *Voyles* v. *Federal Land Bank of Columbia,* 182 *Ga.* 569 (186 S. E. 405).

■ We will next consider the contention that the creditors' suit and the suit by the heirs at law were improperly consolidated. The only assignments of error upon the order of consolidation were as follows: "To which ruling and judgment consolidating said two cases and ordering them to proceed as one case said L. O. Benton Sr. then and there excepted, and here now excepts and assigns the same as error, and says that the court erred in consolidating said cases, because the pleadings therein showed that they were not such cases as could be legally consolidated over his protest, on the grounds stated; that none of the plaintiffs or intervenors in either of said cases were parties to the other case; that Sam Tate II and Georgia Marble Company were defendants in said suit in which Luke E. Tate and others were plaintiffs, but were not parties to said suit of John P. Turk and others; that the plaintiffs and intervenors in the suit of John P. Turk and others were asserting rights as creditors of Sam Tate, deceased, whereas the plaintiffs in the suit of Luke E. Tate and others were asserting rights as heirs at law of said Sam Tate; that the plaintiffs in the suit of Luke E. Tate and others sought to have set aside the probate of a will of Sam Tate and to have the paper so probated declared not to be his will, and to have a deed to certain real estate executed by said Sam Tate canceled, which matters were not involved in any way in said

other case." As will be seen from the foregoing quotation, there is no assignment of error on the ground that the suit by the heirs at law did not state a cause of action, but the only contentions made are based upon stated differences in parties and in the relief sought. "Where there is one common right to be established by or against several, and one is asserting the right against many, or many against one, equity will determine the whole matter in one action." Code, § 37-1007. "A bill is not multifarious because all of the defendants are not interested in all of the matters contained in the suit. It is sufficient if each party has an interest in some matter in the suit which is common to all, and that they are connected with the others. . . All persons who are directly or consequentially interested in the event of the suit are properly made parties to a bill in equity, so as to prevent a multiplicity of suits by or against parties at once or successively affected by the original case." *Blaisdell* v. *Bohr,* 68 *Ga.* 56. On principle, it would seem that valid suits in equity may always be consolidated where the resulting single action is not rendered multifarious. The parties in the two original cases need not be identical. *Turner* v. *Security Plumbing Co.,* 165 *Ga.* 652 (3) (141 S. E. 651). Nor is it necessary that all of the parties in each case should be interested in all the matters involved in each. It is sufficient if there is one common nexus, which in the instant case was supplied by the common contentions in regard to the stock certificate and the common relation of all contentions to the same estate. *Brumby* v. *Board of Lights & Waterworks,* 147 *Ga.* 592 (3), 597 (95 S. E. 7) ; *Swann* v. *Wright,* 180 *Ga.* 323, 326 (179 S. E. 86). Section 3-112 of the Code, whether applicable to cases in equity as well as law cases, does not limit consolidation to the class of cases therein described. The order of consolidation here under consideration was not erroneous for any reason assigned. *Spinks* v. *LaGrange Banking & Trust Co.,* 160 *Ga.* 705 (129 S. E. 31). *O'Malley* v. *Wilson,* 182 *Ga.* 97 (185 S. E. 109) ; *Miller* v. *Jones,* 136 *Ga.* 428, 435 (71 S. E. 910).

■ In the case of L. O. Benton Sr., which is now being considered, the question whether the court was authorized to appoint a receiver or receivers arises solely upon the pleadings. Under the rulings stated above, it can not be said that the appointment was unauthorized by the pleadings. It is contended, however, that the appointment as made was erroneous, because the court did

not comply with a request of the plaintiff in error to require the plaintiffs to give bond as a condition of the grant of such relief, and to fix the amount and terms of the bond, so as to protect him against any damage resulting therefrom. There is no merit in this contention. This was a matter to be determined by the judge in the exercise of a sound discretion, and it does not appear that his discretion was abused. Receivers are required to discharge their trust according to the orders or decrees of the courts appointing them, and are at all times subject to their orders, and may be brought to account and removed at pleasure. Code, § 55-307. A receiver is an officer of the court appointing him, is responsible to no other tribunal than said court, and must in all things obey its direction. § 55-309. The judges of the superior courts may, in their discretion, require receivers to give bond conditioned for the faithful discharge of the trust reposed, and shall fix the amount and determine the sufficiency of the security, where the giving of bond is so ordered. § 55-308. The judge in this case did require the receivers to give bond. The complaint is, however, that he did not require the *plaintiffs* to give bond. The receivers could not sell or dispose of this stock without an order of court, and will act at all times under the direction of the court. Accordingly, it does not appear that the judge abused his discretion in refusing to require a damage bond from the plaintiffs.

It is further contended that the court erred in refusing a request of L. O. Benton Sr. to permit him to give bond in such an amount and upon such terms as the court might determine, in lieu of the appointment of receivers for such stock. Under the allegations of the petition as amended, all of which must be taken as true for the present purposes, we are not prepared to say that the judge abused his discretion in refusing this request. According to the allegations, the stock covered by this certificate has a potential value of more than half a million dollars. The claim of the plaintiff in error does not exceed one twentieth of this sum. The other nineteen twentieths of its value may, if conserved, become an asset available to other creditors. The stock represents the majority or controlling interest in a going corporation. The sum ultimately realized may depend upon the management and success of this corporation, and upon the success of the corporation will depend in large measure the solvency or insolvency of the decedent's

estate. In the circumstances, should not the corporation be governed by impartial representatives having in view the interests of other creditors, and as well the rights of the plaintiff in error? Under the averments of the petition, the judge could reasonably have determined that, regardless of bond, the interest of all parties concerned might best be protected by the appointment of receivers, with proper directions from the court. Even assuming that L. O. Benton Sr., while holding this stock as security for a debt, might have had the right to vote the stock so long as it thus remained in his possession (see, on this question, *National Exchange Bank of Augusta* v. *Sibley*, 71 *Ga.* 726; *Hardman* v. *Barrow*, 147· *Ga.* 617 (2), 95 S. E. 209; *Scott* v. *Flint River Pecan Co.*, 159 *Ga.* 668 (2), 126 S. E. 769; Boyett *v.* Hahn, 197 Ala. 439, 73 So. 79; 13 Am. Jur. 532; 14 C. J. 731, 904), we think it was yet within the power of the court to require that the stock be delivered to receivers and by them voted impartially in such manner as the court might direct for the benefit of all parties at interest, including the plaintiff in error. It appears from the record that the court did direct the receivers to vote the stock for "re-election of the present directors, and thereafter, when questions are to arise to be voted on, [to] apply to the court for direction." This order was not upon its face inimical to any right of the defendant, but appears to have been based upon an effort to preserve the status quo in reference to the corporation, for the benefit of Benton as well as other persons. *Bigbee* v. *Summerour*, 101 *Ga.* 201 (28 S. E. 642). It does not appear that any right of Benton has been substantially violated, or that there was any abuse of discretion on the part of the judge. The facts of this case do not bring it within the principle laid down in *Stillwell* v. *Savannah Grocery Co.*, 88 *Ga.* 100 (13 S. E. 963) ; *Bivins* v. *Marvin*, 96 *Ga.* 268 (2) (22 S. E. 923) ; *Turnipseed* v. *Kentucky Wagon Co.*, 97 *Ga.* 258 (23 S. E. 84) ; *Morgan* v. *Boyles*, 168 *Ga.* 453 (148 S. E. 89) ; in which it was held erroneous to appoint a receiver without allowing the parties in possession the opportunity to give bond instead of surrendering the property. The facts of each of these cases were materially different from those appearing in the case at bar. Besides other distinguishing features, none of them involved the controlling interest in a large and going corporation, the success of which will largely determine the solvency of the estate in

which the plaintiffs and others are interested as creditors, and in which corporation the defendant has no other interest except that he holds the stock as security for a *comparatively* small sum due to him by his transferor.

■ We come next to a consideration of case 12,808, in which Steve Tate as an individual, L. O. Benton Jr., Mrs. L. O. Benton Jr., and Sam Tate II are the plaintiffs in error. The first matter complained of by them is the order of consolidation. The assignments of error are in the same form as those dealt with in division 7 of this opinion, and, under the rulings there stated, are without merit. While we ruled in division 1 that the suit by the heirs at law was subject to general demurrer as failing to state a cause of action, the order of consolidation was not assigned as error on this ground, nor was the order appointing receivers challenged upon any such ground. Under the rulings hereinbefore made, however, the court erred in overruling the demurrers filed by these plaintiffs in error to the heirs' suit, but did not err in overruling the demurrers to the creditors' suit. Although the evidence was in sharp conflict upon some of the material issues, that introduced by the plaintiffs tended to support the allegations of the petition as amended, and it can not be said that the judge abused his discretion in granting an interlocutory injunction and appointing receivers. Nor did the judge abuse his discretion in not requiring the plaintiffs to give a damage bond for the protection of these defendants, or in refusing to permit the defendants themselves to give bond for the production of the stock certificate, in lieu of the appointment of receivers. The facts of this case do not bring it within the principle ruled in the *Stillwell, Bivins, Turnipseed,* and *Morgan* cases, just cited. On the questions as to bond, see division 8 of this opinion. Something has been said in the briefs in reference to removal of executors. We do not find in this record any order having the effect of such removal. If upon a trial the plaintiffs should fail to sustain their allegations, the receivers would go out and the executors would again resume custody. Before the adoption of the first Code, it was held that a court of chancery had concurrent jurisdiction with the court of ordinary in holding executors to security and in removing them (*Johns* v. *Johns,* 23 *Ga.* 31) ; but in *Powell* v. *Hammond,* 81 *Ga.* 567, 579, 580 (8 S. E. 426), the following observations were pertinently made by Judge

734

Bleckley: "It deserves inquiry whether, since the Code, § 331, 2, declares that 'courts of ordinary have authority to exercise original, exclusive and general jurisdiction of . . the granting of letters testamentary, of administration, and the repeal or revocation of the same,' and inasmuch as the old statute (Cobb's Dig. 307), which gave the superior court, or the judge thereof, power to require security from an executor, has not been brought forward in the Code, the court of ordinary alone has not the jurisdiction to exact bonds of executors for the faithful execution of their trust, and to remove them from office, that is, revoke their letters. . . There seems much propriety in leaving the power of removal, and of requiring bond, with the court whose officer the executor is. This would not abridge in any way the jurisdiction or efficiency of courts of equity in dealing with assets, for as receivers can be appointed and the assets secured through their agency, these courts need not concern themselves with removing executors or seeing that they give security." Compare *Calbeck* v. *Herrington*, 169 *Ga.* 869 (152 S. E. 53). The order appointing receivers in this case is not to be construed as removing the executors, although it might for the time being leave them empty-handed; nor is any question presented as to whether such power of removal may be now exercised by a court of equity.

Continuing with case 12,808, we have the further contention that the court erred in extending the receivership to the entire estate of Sam Tate, deceased. Since the heirs' suit was bad in substance, and the creditors' suit did not seek any relief except in regard to the stock certificate, there is much force in the argument that the receivership should in any event have been confined to the corporate stock in question. On the other hand, it appears from the record that without this stock the estate would be practically insolvent; and there was some evidence to show that the stock itself has a potential value of several hundred thousand dollars. In any event it is subject to an encumbrance in favor of L. O. Benton Sr., if not in favor of other defendants. The estate can not enjoy the value of this stock without the removal of such encumbrance or encumbrances. Under the facts appearing, the judge was authorized to find that the removal of the encumbrance or encumbrances should be entrusted to receivers acting under direction of the court; and yet how could this responsibility ever be

executed unless the other portions of the estate were placed under their control, or, to be more exact, taken into the custody of the court for the purpose of administration at least to that extent, through the agency of receivers? Under the pleadings and the evidence, it can not be said as a matter of law that the judge abused his discretion in appointing receivers for the entire estate.

In case 12,809, Ernest Hudson and Steve Tate as executors are the plaintiffs in error. These executors were named as defendants, both in the creditors' suit (by amendment) and in the suit by the heirs at law. They filed a general demurrer to the heirs' suit, which demurrer the court overruled; and this is one of the grounds of error stated in their bill of exceptions. Under the rulings made in the companion cases, this assignment of error is well taken, and requires a reversal to the extent of eliminating the suit by the heirs at law. Other assignments of error complain of the order appointing receivers, it being contended that under the pleadings and the evidence the estate should have been allowed to remain in the custody of the executors, and the more especially so in view of the fact that it was shown by the evidence that the executors themselves had, on December 15, 1938, filed a petition for marshaling and direction. The mere fact that such a petition was filed by the executors, after suit by the creditors, did not as a matter of law prevent the judge from arriving at the same conclusion on the evidence which he would have been authorized to reach in the absence of such action by the executors. The court in a proper case might entertain a suit by executors for direction, and still appoint receivers to execute directions given therein. The two powers of the court are given equal recognition in the Code, and are not antagonistic, but are co-ordinate and consistent. Neither can destroy or displace the other, and they may be exercised simultaneously, where the facts so authorize. The contention is also made in this case, as in 12,808, that the receivership should not have extended to the entire estate. Under the rulings heretofore made, the judge did not err, as against these defendants, either in the appointment of receivers or in extending their control to the entire estate. While the attorneys in the present case are not the same as those who represent the plaintiffs in error in the two preceding cases, the cases have all been considered together, and the briefs filed in each case have been carefully studied in

736

reference to all of them. It follows from what has been said, that the judgment in each case must be affirmed in part and reversed in part, but that the reversal will go only to the extent of eliminating the suit by the heirs at law. Compare *Town of Adel* v. *Woodall,* 122 *Ga.* 535 (50 S. E. 481); *Bowen* v. *Bowen,* 182 *Ga.* 299 (4) (185 S. E. 312); *Griffith* v. *Hapeville,* 182 *Ga.* 333 (4) (185 S. E. 522).

*Judgments affirmed in part and reversed in part. All the Justices concur, except Reid, C. J., and Atkinson, P. J., disqualified.*